**Sabyl Landrum, SBN 303852**
**Brigitte Nicoletti, SBN 336719**
EAST BAY COMMUNITY LAW CENTER
2001 Center St, 4th Floor
Berkeley, CA 94704
Tel: (510) 548-4040
bnicoletti@ebclc.org

**Thomas Zito, SBN 304629**
**Melissa Riess, SBN 295959**
DISABILITY RIGHTS ADVOCATES
2001 Center St, 3rd Floor
Berkeley, CA 94704
Tel: (510) 665-8644
mriess@dralegal.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

(San Francisco or Oakland Division)

| | |
|---|---|
| YESICA PRADO, LUCIAN JEFFORDS, ERIN SPENCER, and ANGEL KENNETT, | **Case No.** |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| CITY OF BERKELEY, | Judge: |
| Defendants. | |

Plaintiffs YESICA PRADO, ERIN SPENCER, LUCIAN JEFFORDS, and ANGEL KENNETT ("Plaintiffs") complain and allege as follows:

**I.    INTRODUCTION**

1.    Plaintiffs bring this case seeking two remedies. The first is to stop defendant CITY OF BERKELEY from evicting unhoused Berkeley residents from the area around the intersections of 7th, 8th and 9th Streets and Harrison Street ("8th and Harrison"), one of the few remaining locations in Berkeley where unhoused individuals have built an established community, until there is adequate shelter or housing available to those residents. The second is to ensure that the CITY OF BERKELEY will refrain from evicting unhoused Berkeley residents unless and until it demonstrates that it will provide them with both adequate notice of what it intends to do, and that it is able to provide them with alternative shelter that accommodates their disability-related needs. The abatement action at 8th and Harrison is currently scheduled for the Labor Day holiday, September 4, 2023.

2.    Plaintiffs are unhoused individuals who have resided in the area of 8th and Harrison for several years. Many of them have significant physical and/or mental health disabilities. The area is largely commercially zoned, and unhoused Berkeley residents have been living there for over ten years with little negative interaction with neighbors and city officials.

3.    On the late afternoon of Friday, September 1, 2023, City officials posted a "Notice of Imminent Health Hazard and Emergency Abatement" on a telephone pole on Harrison Street between Seventh Street and Eighth Street stating that it intended to remove and destroy property left on the street on September 4, 2023—in other words, the City provided the residents with three days' notice over a holiday weekend. The City's notice is attached as Exhibit A to this Complaint. Although the city has been conducting outreach to the community for the past several weeks, none of the City's representatives had previously communicated that this abatement action would be taking place on September 4. No explanation has been provided as to why this emergency action must happen on a holiday weekend.

4.    This timing is unconscionable. It leaves the residents of the area with extremely limited time to make alternative plans for their belongings and to find alternative shelter.

Plaintiffs Erin Spencer, Lucian Jeffords, and Angel Kennett have either physical or mental health disabilities that will prevent them from being able to move their belongings in such a short time frame.

5. Additionally, the notice itself is defective in that it is vague and confusing. The notice claims that there is a health and safety hazard in violation of the Berkeley Municipal Code posed by the conditions of the area. It states that by September 4, 2023, individuals must discard debris and reduce their possessions to a 9x9 foot area. It states that defendant CITY OF BERKELEY can store a limited amount of property, but that items left unattended will be discarded. However, it provides no guidance as to how individuals should mark their 9x9 foot area or designate the items they need to have stored. Further, this notice was posted in several locations, but was not personally delivered to residents as required by Berkeley Municipal Code.

6. At the same time the "Notice of Imminent Health Hazard and Emergency Abatement" was posted, defendant CITY OF BERKELEY also posted a Public Notice with the subject, "Shared Sidewalk Policy – Notice of Violation." The Notice of Violation is attached to this Complaint as Exhibit B. This document is simply addressed to "Persons at Harrison," with no indication which residents on which portions of Harrison will be impacted. It also does not contain any reference to a date of enforcement.

7. Based on these notices, it is unclear what action will take place on September 4, 2023, where it will take place, how many individuals will be impacted, and how residents can comply with the Berkeley Municipal Code to avoid potential arrest and having their belongings discarded.  On Friday, September 1, Plaintiffs filed an appeal as stated in the notice, and served a letter on the City (including the City Manager, City Attorney and City Council) requesting the City not proceed with the property destruction and provide accommodations to Plaintiffs and others with disabilities.  However,  the City has not responded to either the appeal or demand letter.

8. While Berkeley has provided offers of shelter to Plaintiffs and some other individuals residing in the area, this offer of shelter is conditioned on their being willing to give up their property, and on their compliance with a set of restrictive rules and policies which are

particularly difficult for individuals with mental health needs to comply with.  Plaintiffs need reasonable accommodations to both of these conditions in order to access this shelter. The City has refused to provide those accommodations.

9.      In response, Plaintiffs bring this lawsuit seeking to stop defendant CITY OF BERKELEY from displacing the residents of 8th and Harrison until such time as there is accessible shelter or housing made available for them. Plaintiffs also ask the Court enjoin defendant CITY OF BERKELEY from destroying their property, as it has been wont to do in prior evictions and protect Plaintiffs from the imminent and irreparable injuries they face.

## II.    JURISDICTION AND VENUE

10.     Plaintiffs' claims arise under the laws and Constitution of the United States, including 42 U.S.C. § 12132 and 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

11.     The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65, authorize this Court to grant Plaintiffs the declaratory and injunctive relief they seek here. An award of attorneys' fees is authorized pursuant to 42 U.S.C. § 1988(b).

12.     This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiffs' federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

13.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because defendant CITY OF BERKELEY is located in this district and a substantial part of the events and/or omissions were committed in this district.

14.     Because the events and omissions giving rise to Plaintiffs' claims occurred in Alameda County, this case should be assigned to the Northern District's Oakland or San Francisco Division, pursuant to N.D. Cal. L.R. 3-2(d).

## III.     THE PARTIES

15.     Plaintiff YESICA PRADO is a journalist and community advocate and is a person with a disability. She has been unhoused and living in an RV since 2017. She has lived in numerous locations in Berkeley, often joining established RV encampment communities because they provide her with safety and security, and support that is necessary for her to succeed. She has moved from location to location as the City has closed different encampments. She was living near the Berkeley Marina, but when the City closed that area, she moved to 8th and Harrison in 2018. In her new community, she and her neighbors have supported each other through mutual aid and chores, and welcomed other unhoused residents to join the community. Her RV is currently parked on 8th Street between Harrison and Gilman. Though it is operable, it has mechanical issues that prevent it being moved more than a few hundred feet. The only offer of shelter she has received from defendant CITY OF BERKELEY is the Super 8 Motel. She has been told that she has an intake appointment on September 12, 2023. When she asked if she could park her RV there, she was told no, even though she has told city officials that it does not run well enough to be moved frequently enough to comply with parking regulations. She also told the City that she needs to be able to have visitors because her community is critical to her mental health. She needs to have visitors as an accommodation to her mental health disabilities. She was told there is a no visitor policy. No accommodation to the "no visitor" policy was offered to her. Over the years as both an unhoused resident and a journalist, she has witnessed and been subject to numerous evictions carried out by defendant CITY OF BERKELEY. She has lost her belongings before without her consent and seen others lose everything, even the tent they were sleeping in. These experiences have been traumatizing. Her mental health history impacts her ability to access certain shelter options, particularly shelters that provide little support and community. Plaintiff YESICA PRADO therefore has already suffered actual harm and will likely

1  suffer further irreparable harm if defendant CITY OF BERKELEY proceeds with the September

2  4, 2023 eviction.

3      16.    Plaintiff LUCIAN JEFFORDS is a person with a disability and currently lives in

4  his RV on Harrison Street between 8th and 7th streets. He has serious health issues that have left

5  him very physically weak, and is currently waiting to undergo a medical diagnostic procedure in

6  the next week or two. He has expressed to city officials that he cannot move his belongings right

7  now because of his health issues, but has not been provided with any reasonable accommodation

8  including additional support to move his belongings or extra time to move them. He has been

9  offered space at the Berkeley Inn but has been told he cannot park his RV there. He has been told

10 that if he accepts a space at the Berkeley Inn, defendant CITY OF BERKELEY will "take care of

11 his RV." When he asked what this meant, he was told they would impound it and sell or destroy

12 it. He also has two cats that he relies on for emotional support, and has been told he can only take

13 one cat to the Berkeley Inn. He was not provided with an accommodation for his second cat. He

14 has also been offered housing at Abode Housing in Hayward but what the housing entails and

15 when it is available was not explained to him.  He is unsure of the cost of this housing and

16 believes he would have to pay for it, which he does not have the means to do. Plaintiff LUCIAN

17 JEFFORDS therefore has already suffered actual harm and will likely suffer further irreparable

18 harm if defendant CITY OF BERKELEY proceeds with the September 4, 2023 eviction.

19     17.    Plaintiff ERIN SPENCER currently lives in a shelter which he constructed on

20 Harrison Street between Seventh and Eighth Streets, where he stores his possessions, including

21 tools and materials for repairing bicycles and other mechanical items, with which he earns his

22 livelihood. These items will not fit a 9x9 foot square area or be allowed by the motel program in

23 a motel room. He has lived here for a year. Previously, he lived near Ashby, where the CITY

24 evicted him and destroyed all of his possessions. Plaintiff SPENCER has a disability from his

25 service in the U.S. Marine Corps which limits his mobility in his shoulder and restricts his ability

26 to lift items. He has told City officials on numerous occasions that he will not be able to

27 independently move his property from Harrison Street due to his disability. The City has not

28 provided any reasonable accommodation to assist him to move his property.  The three-day

---

*Prado, et al., v. City of Berkeley*
**Complaint**                                                                5

timing of the abatement action will not give him sufficient time to move his possessions. He has been offered a place at the Super 8 motel but the restrictive policies, including the prohibition on visitors, limitations on storage, and lack of privacy, mean that the motel program is not a viable option for him given his mental health needs. He does not feel comfortable or safe living in an enclosed environment where he does not have control over who comes into his space.

18.     Plaintiff ANGEL KENNETT is 42 years old and has lived at on and off at Harrison Street, and keeps many of her possessions there. She currently has a room at the Berkeley Inn, but the restrictive storage policies there mean that she cannot bring many of her items specifically those that she will need to have in order to survive outdoors if she ever lost her shelter at the Inn. Plaintiff KENNETT has mental health disabilities including OCD and anxiety, and engages in self-harm, which are exacerbated by the vague and confusing communications from the City regarding the nature of its planned abatement action, and by the prospect of losing all of her property. The restrictive policies at the Berkeley Inn hurt Ms. Kennett by exacerbating her mental health disabilities and put her at risk of harm or violating the policies and being thrown out back onto the streets.  Specifically, she relies on her friends and family to support her, but the Berkeley Inn does not allow any visitors or socializing between residents of the Inn. Her own brother also lives at the Berkeley Inn but she is not even allowed to visit him at the Inn. She also does not feel safe there because she has no privacy. Inn staff have keys to the rooms, and can come in at any time. A member of staff walked in on her while she was taking a shower. She has a great deal of uncertainty at the Inn regarding the rules and if and when  they will consistently be enforced. This has caused and continues to cause her significant anxiety.

19.     Defendant CITY OF BERKELEY is a municipal corporation organized under the laws of the State of California. Upon information and belief, it provides the shelter and housing services through its contracts, it sets the policies for evictions and property destruction, and it is in all ways responsible for the violations of the laws alleged herein.

**IV.**     **FACTUAL ALLEGATIONS**

      **A.**     **History of the Harrison Street Encampment**

      20.     Unhoused individuals have been residing at 8th and Harrison for at least the past ten years. Residents moved to the area because it is largely commercial, and is also close to necessary establishments like grocery stores and gas stations.

      21.     The 8th and Harrison community is located in the area loosely bounded by 6th street, Gilman Street, 9th Street, and Lower Cordonices Path.

      22.     Many residents, including Plaintiffs YESICA PRADO and ERIN SPENCER, moved when defendant CITY OF BERKELEY and other government agencies evicted them from other encampments in the area. Over the past several years, defendant CITY OF BERKELEY and other agencies have closed a large number of encampments, such as the Berkeley Marina, Seabreeze (location), Ashby Shellmound (near the Ashby freeway exit off of I-80). Defendant CITY OF BERKELEY has also begun to more aggressively enforce parking regulations such as 72 hour and 4 hour parking limits that target vehicularly housed residents, decreasing the number of locations individuals who live in their vehicles can park. These laws were rarely enforced in this area previously. As a result, unhoused Berkeley residents have very few locations where they can gather as communities in the area for safety and mutual support.

      23.     The community at 8th and Harrison has a well established system of mutual aid and support. Residents rely on each other to watch each other's belongings while individuals work or rest, to complete chores, obtain food and water, keep each other safe, and keep each other company. Many residents have serious mental and physical health needs, including Plaintiffs LUCIAN JEFFORDS, ERIN SPENCER, and ANGEL KENNETT, and so this network of support is critical to their survival.

      24.     As of September 2023, approximately 50 individuals reside in the area around 8th and Harrison.

B. **Current Lack of Availability at Berkeley Shelters**

25.     According to the most recent statistics from 2022, there are currently over 1,000 people in Berkeley experiencing homelessness.[1]

26.     Unhoused persons report that financial pressures including evictions, foreclosures, rent increases, and job loss are among the top five reasons they became homeless.[2] Among Berkeley residents experiencing homelessness, 43 percent have a disabling condition and are increasingly reporting that they are dealing with more than one major health challenge.[3] In Berkeley, 45 percent of the unhoused population is Black, even though only 8 percent of its total population is.[4]

27.     Berkeley's shelters have been overwhelmed by this situation. There are very few shelter options available to Berkeley residents generally. At this time, defendant CITY OF BERKELEY is offering residents at 8th and Harrison shelter spaces in the Super 8 Motel located at 1619 University Avenue, Berkeley CA, and in the Berkeley Inn. Additionally the City has been offering housing at Abode Housing in Hayward, but has provided the Harrison residents with very little information about the nature of this housing, and though it has indicated that there would be a cost associated with this housing, which would be a barrier for most Harrison residents. Upon information and belief, the services provided by the programs at these hotels are very restricted. Both hotels will not permit individuals to park Recreational Vehicles on site. Both hotels will not permit visitors at any time or even socializing between residents. Both hotels have strict limitations on the amount and type of personal property residents can bring. Both hotels have limits on pets and other rules. Both hotels do not permit cooking. And both hotels have an extremely limited number of rooms that accommodate individuals with physical disabilities. It is not clear how long participants in the hotel programs will be permitted to stay.

28.     Those who have RVs or other large vehicles have been told their only option is to accept shelter and let defendant CITY OF BERKELEY dispose of their vehicle, or park on city

---

[1] https://everyonehome.org/main/continuum-of-care/everyone-counts/
[2] *Supra*, note 5.
[3] *Ibid.*
[4] *Ibid.*

1  streets and move the vehicles  constantly to avoid tow. Many vehicles are also unregistered, and

2  residents are not able to get them registered due to financial or other constraints, and so those

3  vehicles are also subject to tow. Moving vehicles every 3 days to comply with the 72-hour

4  ordinance is not possible for those who have mechanical issues with their vehicles, and for those

5  with health or physical disabilities like Mr. Jeffords doing so would be exceedingly difficult.

6  The City is not providing for accommodations to enforcement of parking ordinances to any

7  Plaintiffs or other individuals with disabilities.

8       29.    The majority of residents of 8th and Harrison have nowhere to go and because the

9  notices are vague and have not been delivered to individuals or attached to tents or vehicles,

10  residents are not even sure if these notices apply to them. Although there are approximately 50

11  individuals who reside in the area of 8th and Harrison,  defendant CITY OF BERKELEY

12  incorrectly estimates the population to be around 25 individuals. Although Plaintiffs have seen

13  the notices, no one has been told by the City that the community would be evicted and people

14  forced to relocate.

15      **C.**     **Berkeley's Policy and Practice regarding Destruction of Property**

16       30.    Despite the lack of available shelter, defendant CITY OF BERKELEY has

17  engaged in a policy and practice of evicting unhoused residents throughout the city, and, in the

18  process, destroying their shelters, vehicles, and other belongings. Unhoused residents often are

19  forced to other areas of the city without adequate shelter to protect themselves while living

20  outdoors, and often after having their belongings destroyed by the city.  Witnesses who have

21  lived in the 8th and Harrison community for many years have observed city officials demolishing

22  people's shelters, confiscating their tents, and leaving people exposed to the elements. This has

23  been done both in the pouring rain and in extreme heat.

24       31.    Witnesses, including Plaintiff PRADO, have also observed employees of

25  defendant CITY OF BERKELEY destroying property even while the owners of that property

26  have been telling them that it belongs to them and that they want to keep it.

27       32.    Witnesses have observed individuals be arrested by CITY OF BERKELEY police

28  officers for refusing to permit the destruction of their belongings.

33.     One recent example of this policy and practice occurred at 8th and Harrison within the last year.[5] On September 30, 2022, residents received a "Notice of Imminent Health Hazard and Emergency Abatement," stating that the abatement would take place just four days later, on October 3, 2022—much like the sudden action threatened by the City this weekend.

34.     On October 3, 2022, defendant CITY OF BERKELEY destroyed 29 tents, three structures, and impounded and crushed four vehicles that unhoused residents of the community relied upon for shelter. Two residents were hospitalized, one was arrested and jailed for three days before the charges against him were dropped, and many residents experienced panic attacks and trauma.

35.     Peter Radu, assistant to the City Manager of Berkeley, later publicly apologized for the City's actions, claiming defendant CITY OF BERKELEY would work with people as opposed to against them moving forward.[6] Nonetheless, the City is once again repeating its pattern of destructive and illegal conduct again, less than a year later.

**D.     The September 4, 2023 (Labor Day) Abatement**

36.     In the late afternoon of September 1, 2023, defendant CITY OF BERKELEY posted notices at 8th and Harrison.  One notice is a "Notice of Imminent Health Hazard and Emergency Abatement Beginning Sept. 4, 2023." This notice claims that there is a health and safety hazard in violation of the Berkeley Municipal Code posed by the conditions of the area. It states that by September 4, 2023, individuals must discard debris and reduce their possessions to a 9x9 foot area. It states that defendant CITY OF BERKELEY can store a limited amount of property, but that items left unattended will be discarded. It provides no guidance as to how individuals should mark their 9x9 foot area or designate the items they need to have stored. (Exhibit A). Further, this notice was posted in two locations, but was not personally delivered to residents as required by Berkeley Municipal Code section 11.40.140.

---

[5] https://www.sfpublicpress.org/everything-is-gone-and-you-become-more-lost-12-hours-of-chaos-as-berkeley-clears-encampment/

[6] https://www.sfpublicpress.org/berkeley-apologizes-for-aggressive-homeless-encampment-sweeps-promises-reforms/

37.     At the same time the "Notice of Imminent Health Hazard and Emergency Abatement" was posted, defendant CITY OF BERKELEY also posted a Public Notice with the subject, "Shared Sidewalk Policy – Notice of Violation." This document is addressed to "Persons at Harrison," with no indication which residents on which portions of Harrison will be impacted. It also does not contain any reference to a date of enforcement. (See Exhibit B).

38.     Based on these notices, it is unclear what action will take place on September 4, 2023, what laws are being enforced, and how residents could comply with Berkeley Municipal Code.

39.     Defendant CITY OF BERKELEY has been conducting outreach to residents of 8th and Harrison for the past several months, and although it had indicated that they would be clearing unhoused individuals from the area at some point in the future, residents had no warning that these notices would be posted on the September 1, 2023 holiday weekend. In fact, the posting of notices is in direct opposition to the closure timeline previously communicated by various city officials to residents. Plaintiff LUCIAN JEFFORDS heard from one city official that residents would have until mid-September to move or accept shelter. Plaintiff YESICA PRADO heard a city official state the closure would take place on September 12, 2023. Several residents, including Plaintiff PRADO, have intake appointments for shelter options on or after September 12, 2023. One resident, Victoria Jones, received an offer of shelter with an intake date of August 30, 2023, but heard nothing further from the City regarding the shelter offer and did not receive transportation to the shelter as promised by the City. These offers of shelter include a provision requiring the residents to authorize City Officials to destroy residents' remaining belongings at 8th and Harrison after their intake appointments.

40.     The looming abatement action poses significant risk of imminent injury to Plaintiffs and other residents of 8th and Harrison.

41.     Plaintiffs Prado, Spencer, Jeffords, and Kennett cannot move all of their belongings by September 4, 2023. First, the storage options listed in the City's notice are closed on September 4 (a federal holiday) which renders the storage offer illusory, and gives them even less time to sort through their items and move them. Additionally, Plaintiffs Spencer and Jeffords

both have physical disabilities which prevent them from moving their personal property without assistance. Both have made their disabilities known to the defendants and requested accommodations, but have received no response. Plaintiffs Prado and Jeffords have Recreational Vehicles that they cannot bring to shelter sites, and that they cannot move to comply with parking regulations.  They have also been provided with no individualized notice about their vehicles or whether they would be seized and towed.  Thus, Plaintiffs Prado and Jeffords stand to lose many of their belongings, including their shelters, if the abatement proceeds. Further, Plaintiff PRADO's intake appointment is not until September 12, 2023, so she cannot even assess whether she could enter the program until after the abatement has occurred and she has potentially lost her shelter and belongings.

42.     The outreach conducted by defendant CITY OF BERKELEY has not adequately met the needs of residents with disabilities.

43.     The CITY OF BERKELEY's outreach efforts are conducted in an inaccessible manner and in a way that denies plaintiffs with disabilities equal access to the program. Upon information and belief, outreach teams going to 8th and Harrison do not include personnel from Berkeley Mental Health Services, nor have outreach teams called in the support of Berkeley Mental Health Services when called to do so. The CITY OF BERKELEY has a practice of marking individuals with mental health disabilities who need additional communication support as resistant to services, rather than providing them with accessible outreach.

44.     For example, some Harrison Street residents, including Plaintiff Angel Kennett, have mental health disabilities that impact their ability to think in an organized fashion, interfere with their ability to remember appointments, increase their anxiety during the completion of typical tasks, and require that persons working with them take additional time and operate with patience.

45.     The vague and unexpected notices exemplify the inadequacy and inaccessibility of the outreach as these dates could have and should have been communicated clearly in an accessible manner to all residents individually, but instead only exacerbates the confusion, stress,

1   and trauma Plaintiffs and other residents are experiencing, and compounding the harm

2   experienced by Plaintiffs and other residents with disabilities.

3       46.     Further, the offers of shelter at the Super 8 Motel and the Berkeley Inn do not

4   accommodate Plaintiffs' disability related needs, particularly the no visitor policy. And the City

5   and the shelters have refused to accommodate Plaintiffs' disabilities.  Additionally, Plaintiffs and

6   other residents have been unable to assess whether the other program requirements will be

7   accessible to them because city officials will not provide them with the program guidelines prior

8   to their intake appointments, and some, including Plaintiff PRADO, do not have intakes

9   scheduled until after September 4, 2023.

10      47.     If the abatement proceeds and individuals are forced to move before there are

11  adequate shelter options available, Plaintiffs will lose not only their shelter and homes, but also

12  the support of their community, placing them in immense risk of harm. They will also lose touch

13  with other service providers who reliably visit them at 8th and Harrison.

14      48.     By closing encampments when people have no place to go by not allowing

15  sufficient time for outreach workers to contact people being displaced and find them safe,

16  accessible housing, and by leaving people evicted from those encampments no choice but to

17  move to more dangerous locations where the health and safety at risk, Berkeley will be placing

18  people whom it evicts in harm's way. Berkeley has created dangers for their health and safety.

19  These dangers are particularly acute for the many people who have been displaced with no place

20  to go who have serious mental and physical disabilities. People with disabilities are harder to

21  place than people who are able-bodied and do not have mental health needs. They require more

22  time and more intensive assistance because of their disabilities.

23      49.     Defendant CITY OF BERKELEY has no urgent reason to clear 8th and Harrison

24  in the manner described in the posted notices. Though defendant CITY OF BERKELEY

25  articulates health and safety hazards present in the community, there are less drastic actions that

26  could be taken rather than an abatement, such as a coordinated garbage removal process with

27  resident input. Further, the potential hazards do not negate residents' rights under federal and

28  state law including the warrantless and unlawful seizure and destruction of Plaintiffs' and other

residents' property. Plaintiffs and other residents who have accepted offers of shelter but who do not have intakes until after the abatement will be subject to the abatement and destruction of property prior to getting access to shelter.

50.     The Notice of Abatement includes a right to appeal the abatement, but this right was rendered nearly meaningless by the timing of defendant CITY OF BERKELEY's posting – in the late afternoon of the Friday before Labor Day Weekend, with the abatement set to start on Labor Day itself, when the majority of legal support organizations, service agencies, and even storage facilities are closed. Further, according to the notice, the abatement may still proceed even if there is a request for appeal.  Any appeal is meaningless if the Plaintiffs' property has already been destroyed.  An appeal of the destruction of vehicles seized without individualized notice violates the federal Constitution, post-destruction remedies do not suffice.  *See Grimm v. City of Portland,* 971 F.3d 1060, 1063 (9th Cir. 2020).

51.     Despite this, Plaintiffs did request an appeal of the abatement by emailing assistant to the City Manager, Peter Radu, and hand delivering a copy of the request to the Office of the City Manager at 2180 Milvia St, Berkeley, CA, before 4pm on September 1, 2023. As of the filing of this document, Plaintiffs have received no response to this request.

## CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

### Exposure to State-Created Danger
### Under the Fourteenth Amendment to the U.S. Constitution
### Pursuant to 42 U.S.C. § 1983

52.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

53.     Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. Amend. XIV.

54.     Local governments violate the substantive due process rights of unhoused people when they place unhoused individuals in more vulnerable situations by confiscating the survival

belongings that they use for shelter, warmth, and protection from the elements. *See Santa Cruz Homeless Union*, 514 F. Supp. 3d 1136 at 1144-1145; *Sanchez*, 914 F. Supp. 2d at 1101-02.

55.     Defendant CITY OF BERKELEY has a policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, that is necessary for their protection. Defendant CITY OF BERKELEY engages in these practices without ensuring that accessible shelter and/or housing options are available to unhoused individuals.

56.     Without any other available accessible option for shelter and without their tents and survival gear unhoused individuals are forced to live exposed to the elements, without protection from heat, cold, wind, and rain. Individuals who are forced to leave established encampments are also separated from community support, including food and water donations, community safety networks, and access to service providers and their neighbors' support and company. This severely jeopardizes their physical and mental health.

57.     Defendant CITY OF BERKELEY's actions have placed Plaintiffs and others in a more dangerous situation than the one in which they were found and created and exposed them to a danger which they would not have otherwise faced.  *Martinez*, 943 F.3d at 1271.

58.     Defendant CITY OF BERKELEY knows or should know that its actions endanger the health and safety of unhoused individuals, and defendant CITY OF BERKELEY has acted with deliberate indifference to this danger. Defendant CITY OF BERKELEY's conduct is shocking to the conscience and further imperils the health and safety of unhoused people.

59.     Defendant CITY OF BERKELEY's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights.

60.     WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

**Exposure to State-Created Danger
Under Article I, § 7(a) of the California Constitution
Pursuant to 42 U.S.C. § 1983**

61.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

62.     Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the California Constitution. Cal. Const., art. I, § 7(a). The substantive due process protections under the California Constitution are at least as expansive as those under the U.S. Constitution.

63.     Defendant CITY OF BERKELEY's policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, endangers the health and safety of unhoused people in a way that shocks the conscience. Defendant CITY OF BERKELEY knows or should know that its actions endanger the health and safety of unhoused individuals.

64.     Defendant CITY OF BERKELEY's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights under the California Constitution.

65.     WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

**Property Destruction: Unreasonable Search and Seizure
Under the Fourth and Fourteenth Amendments to the U.S. Constitution
Pursuant to 42 U.S.C. § 1983**

66.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

67.     The Fourth Amendment prohibits local governments from summarily seizing and destroying the personal property of unhoused individuals because individuals have a right to notice and an opportunity to be heard. *See Lavan v. City of L.A.*, 797 F. Supp. 2d at 1012 (declaring that the Fourth Amendment protects homeless persons from government seizure and summary destruction of their unabandoned, but momentarily unattended, personal property), *aff'd, Lavan*, 693 F.3d 1022; *see also Lavan*, 693 F.3d at 1030 ("[E]ven if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead

of immediately destroying it, the City's destruction of the property rendered the seizure

unreasonable."); *Garcia v. City of L.A.*, 11 F.4th 1113, 1124 (9th Cir. 2021) ("our prior caselaw

states clearly that the government may not summarily destroy the unabandoned personal property

of homeless individuals that is kept in public areas").

68.     The Fourth Amendment also prohibits local governments from summarily seizing

and destroying or impounding vehicles of unhoused individuals regardless of how they are

parked.  "**Due process requires that individualized notice be given** before an illegally parked

car is towed unless the state has a 'strong justification' for not doing so." *Grimm v. City of

Portland*, 971 F.3d 1060, 1063 (9th Cir. 2020) (emphasis added); *see also Clement v. City of

Glendale,* 518 F.3d 1090, 1094 (9th Cir. 2008) (explaining that imposition of the significant

costs and burdens of towing cannot be justified as means of deterring illegal parking).

69.     Defendant CITY OF BERKELEY provided inadequate and confusing notice prior

to the planned abatement on September 4, 2023. The Notice of Abatement was posted, not

delivered to individuals as required by Berkeley Municipal Code. The notice does not provide

individuals with guidance related to how to define the property they wish to keep, have stored,

and discard. The Notice of Violation was also only posted and does not apply to a clearly defined

area, and does not include an enforcement date. Thus the notices are vague and invalid.

70.     Further, Defendant CITY OF BERKELEY has an unwritten policy, custom, and

practice of seizing and destroying unhoused people's personal belongings. Defendant CITY OF

BERKELEY destroys such property even if that property poses no threat to public health and

does not constitute evidence of a crime.

71.     Defendant CITY OF BERKELEY's policy, custom, and practice is to evict

unhoused residents and, in the process, to destroy their belongings. Witnesses who have worked

in the community for many years have observed city officials demolishing people's shelters,

confiscating their tents, and leaving people exposed to the elements. This has been done both in

the pouring rain and in extreme heat. Witnesses have also observed employees of defendant

CITY OF BERKELEY destroying property even while the owners of that property have been

telling them that it belongs to them and that they want to keep it.

72. Defendant CITY OF BERKELEY's unconstitutional policies and practices continue, subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and destroyed in violation of the Fourth Amendment.

73. WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Property Destruction: Unreasonable Search and Seizure
### Under Article I, § 13 of the California Constitution

74. Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

75. The California Constitution involves even greater protections than the Fourth Amendment with respect to property seizures. See Cal. Const., art. I, § 13; In re Lance W., 37 Cal. 3d at 879.

76. Despite Defendant CITY OF BERKELEY's written policies to the contrary, it has an unwritten policy, custom, and practice of seizing and destroying unhoused people's personal belongings. Defendant CITY OF BERKELEY destroys such property even if that property poses no threat to public health and does not constitute evidence of a crime.

77. Defendant CITY OF BERKELEY's unconstitutional policies and practices continue, subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and destroyed in clear violation of the more expansive protections under Article I, Section 13 of the California Constitution.

78. WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Discrimination Against Persons with Disabilities
### Under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.

79. Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

80. Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

1  or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

2  to discrimination by any such entity." 42 U.S.C. § 12132. Discrimination under Title II of the

3  ADA includes administration of programs in a way that has a discriminatory effect on people

4  with disabilities, or that has the "effect of defeating or substantially impairing the

5  accomplishment of the objectives of the service, program, or activity with respect to individuals

6  with disabilities." 28 C.F.R. § 35.130 (b)(3)(ii).

7       81.    A local government's removal of homeless individuals and their possessions from

8  public property—as well as the provision of services or shelter to unhoused individuals—are

9  programs, services, and/or activities covered by Title II of the ADA. *See McGary v. City of*

10 *Portland,* 386 F.3d 1259 (9th Cir. 2004) (enforcement of city ordinances subject to the ADA);

11 *Crowder v. Kitagawa*, 81 F.3d 1480, 1482 (9th Cir. 1996) (same for state laws).

12      82.    Failure to provide proper assistance, additional time, or other support to disabled

13 individuals when demanding that unhoused people remove themselves or their belongings from

14 public space is a violation of the ADA. *See Cooley v. City of Los Angeles*, 2019 WL 3766554, at

15 *6 (C.D. Cal. Aug. 5, 2019) ("Cooley […] told LAPD officers that she needed help to carry her

16 property because of her disability and that she lost most of her essential property because her

17 needs were not accommodated […] the City's practices, even if it facially neutral, violate the

18 ADA by unduly burdening people with disabilities such as Cooley").

19      83.    Failing to provide shelter options to unhoused people that meet their disability

20 needs is also a violation of the ADA because it means that shelter is functionally unavailable to

21 them because of their disability. *See Bloom v. City of San Diego*, 2018 WL 9539238, at *3 (S.D.

22 Cal. June 8, 2018) ("[B]ecause of plaintiffs' disabilities, they cannot seek housing in a homeless

23 shelter because the shelters cannot accommodate their disabilities; . . . the shelters are

24 'functionally unavailable' to them").

25      84.    Defendant CITY OF BERKELEY discriminates against unhoused individuals by

26 failing to provide accessible services, parking accommodations, adequate notice, time, and

27 assistance to unhoused people with disabilities who are forced to move themselves or their

28

belongings from public space in response to defendant CITY OF BERKELEY's homeless sweeps.

85.     Defendant CITY OF BERKELEY discriminates against unhoused individuals by failing to provide accessible shelters and/or failing to reasonably modify rules, policies and procedures at its shelters to accommodate the needs of Plaintiffs and other unhoused residents with disabilities.

86.     Forcibly removing unhoused residents without first identifying and offering alternative shelter or services that meet the individualized needs of people with disabilities does not serve any sufficiently compelling or bona fide and legitimate interest of defendant CITY OF BERKELEY, and less discriminatory options are available to defendant CITY OF BERKELEY to achieve any interests it claims it is trying to advance.

87.     Plaintiffs have mental and physical disabilities that are not accommodated by the method by which the City offered shelter, and that are not accommodated by the conditions of the shelter itself.  Plaintiffs have been injured by Defendant CITY OF BERKELEY's discriminatory response to unhoused residents with disabilities.

88.     WHEREFORE, Plaintiffs pray for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Discrimination Against Persons With Disabilities
### Under Cal. Gov. Code § 11135

89.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

90.     Cal. Gov. Code § 11135 is intended to prohibit all forms of discrimination prohibited under Title II of the Americans with Disabilities Act and, where possible, to be more protective of people with disabilities. See Cal. Gov. Code § 11135(b).

91.     By administering its programs for unhoused people and response to homelessness in a manner that has a discriminatory effect on people with disabilities, DEFENDANT CITY OF BERKELEY has violated, and continues to violate, Section 11135.

92.     Plaintiffs have mental health and physical disabilities and have been injured by Defendant CITY OF BERKELEY's discriminatory response to unhoused residents with disabilities.

93.     WHEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTH CAUSE OF ACTION

**Infliction of Cruel and Unusual Punishment in Violation of Eighth Amendment**

**(42 U.S.C. 1983)**

94.     The Eighth Amendment of the United States Constitution states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Martin v. Boise*, 902 F.3d 1031, prohibits the criminalization of individuals for conditions related to their unhoused status if alternative shelter is not available to them. *Martin v. Boise*, 902 F.3d 1031, 1035-36. Criminalization in the context of *Martin* encompasses "credible threat of prosecution" and "credible risk of being issued a citation." *Id.* at 1042.

95.     By posting a notice that threatens arrest for the potential violation of the Berkeley Municipal Code related to unhoused individuals living conditions when there is not adequate shelter for the Plaintiffs and other residents that meets their disability-related needs, defendant CITY OF BERKELEY is violating Plaintiffs' rights under the Eighth Amendment. Further, arrests of individuals refusing to permit the destruction of their belongings at previous evictions overseen by defendant CITY OF BERKELEY increases the credible risk of arrest for the Plaintiffs as they cannot move their belongings by September 4, 2023.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

**Temporary Restraining Order**

A.     Enter a Temporary Restraining Order to maintain the status quo until the Court has an opportunity to hear a request for fuller relief, including a preliminary injunction, so that Plaintiffs can demonstrate that there are serious questions going to the merits of their claims, and that the balance of hardships tips sharply towards them since there is a likelihood of irreparable injury and an injunction is in the public interest.

1

**Declaratory Relief:**

2     A.     Declare that defendant CITY OF BERKELEY's removal of unhoused people

3 from public property and seizure of their necessary survival gear, shelters, and vehicles, in the

4 absence of adequate housing or shelter that accommodates their disability-related needs, violates

5 their right to be free from state-created dangers under the Fourteenth Amendment to the U.S.

6 Constitution and Article I, § 7(a) of the California Constitution;

7     B.     Declare that defendant CITY OF BERKELEY's ongoing seizure and destruction

8 of the personal property of unhoused people violates the Fourth and Fourteenth Amendments to

9 the U.S. Constitution; and Article I, §§ 7(a) and 13 of the California Constitution;

10     C.     Declare that defendant CITY OF BERKELEY's ongoing enforcement and seizure

11 practices, parking enforcement, and shelter programs are government programs that discriminate

12 against unhoused people with disabilities in violation of 42 U.S.C. § 12131 and Cal. Gov. Code §

13 11135;

14

**Injunctive Relief:**

15     A.     Grant a preliminary and permanent injunction enjoining and restraining defendant

16 CITY OF BERKELEY from seizing and disposing of homeless individuals' property in a

17 manner that violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Article

18 I, §§ 7(a) and 13 of the California Constitution;

19     B.     Grant a permanent injunction enjoining and restraining defendant CITY OF

20 BERKELEY from removing unhoused people from public property and seizing their property, in

21 the absence of adequate housing or shelter, in violation of the Fourteenth Amendment to the U.S.

22 Constitution and Article I, § 7(a) of the California Constitution;

23     C.     Grant a permanent injunction enjoining and restraining defendant CITY OF

24 BERKELEY from actions that discriminate against people with disabilities in the administration

25 of its programs in violation of 42 U.S.C. § 12131 and Cal. Gov. Code § 11135;

26

**Mandate Relief:**

27     A.     Issue a mandatory order compelling defendant CITY OF BERKELEY to

28 adequately train staff to stop enforcing ordinances against unhoused people and stop seizing their

property except in conformance with the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution; Article I, §§ 7(a), 13, and 17 of the California Constitution;

B.     Issue a mandatory order requiring defendant CITY OF BERKELEY to reasonably modify their programs to avoid any continued discrimination against unhoused people, pursuant to 42 U.S.C. § 12131 and Cal. Gov. Code § 11135;

C.     Issue a mandatory order requiring defendant CITY OF BERKELEY to submit to regular monitoring and compliance checks by the Court at defendant CITY OF BERKELEY's expense;

**Other Relief:**

A.     Order defendant CITY OF BERKELEY to pay for Plaintiffs' attorneys' fees and costs; and

B.     Grant Plaintiffs such further relief as the Court deems just and proper.

Dated: September 3, 2023                   Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

By: */s/ Melissa Riess*

EAST BAY COMMUNITY LAW CENTER

By: */s/ Brigitte Nicoletti*

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTORNEY ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Complaint for Declaratory and Injunctive Relief. Pursuant to Civil Local Rule 5-1(h)(3) regarding signatures, I, Brigitte Nicoletti, attest that concurrence in the filing of this document has been obtained.


Dated: September 3, 2023                          By: */s/ Brigitte Nicoletti*

# EXHIBIT A



# PUBLIC NOTICE

Date:       September 1, 2023

To:         Persons Encamped and Vehicles Parked on Harrison Street between 7th
            Street and 8th Street

From:       City of Berkeley

Subject:    **Notice of Imminent Health Hazard and Emergency Abatement
Beginning Sept 4, 2023**

On Wednesday, August 23, 2023, the Environmental Health Division and Fire Department for the City of Berkeley conducted a site visit at this location. The site visit revealed significant health and safety hazards due to the presence of excessive amounts of accumulated garbage, raw sewage, open food sources, unsafe structures with combustible materials, numerous loose syringes and various personal property items which have expanded onto the City's rights-of-way. The conditions observed at the time of the site visit are conducive to the proliferation of rats, which increases the potential for disease transmission from rats to the residents in this area and the surrounding community. The presence of numerous rat burrows within and adjacent to the encampment is evidence of a thriving rat population.

## DECLARATION OF IMMINENT HEALTH HAZARD

Based on the observed conditions and associated hazards described above, the Manager of Environmental Health declared the conditions to be an imminent health hazard and public nuisance pursuant to Berkeley Municipal Code Sections 11.36.030 and 11.36.050, and the City Manager ordered a summary abatement of these conditions, on August 31, 2023.

## EMERGENCY ABATEMENT

Please be advised that, as soon as possible, but no sooner than Sept 4, 2023, the City of Berkeley will conduct an emergency abatement due to imminent health hazards at this location based on the extent of violations under BMC sections 11.32.050, 11.32.070, 11.36.030, 17.20.030, and 17.20.050. **Given the imminent health hazards, the City of Berkeley has determined that this encampment poses an imminent threat for all residents, and the City Manager has ordered immediate abatement of the nuisance, including destruction of any property constituting such a nuisance if the nuisance cannot be abated otherwise. Please take this opportunity to address the nuisance conditions listed below, by discarding garbage and**

any items creating a rodent harborage or other health hazards, and reduce your belongings to a 9-square-foot footprint by or before Sept 4, 2023.

## PUBLIC NUISANCE CONDITIONS:

You are hereby notified that pursuant to **Berkeley Municipal Code 11.32.050,** "No person shall possess, occupy or maintain, or cause or permit another person to occupy or maintain, any building, structure, vehicle or any other place in such a condition as will permit the breeding or harboring therein, or thereon, of rodents or any other vermin."

You are further notified that pursuant to **Berkeley Municipal Code 11.32.070,** "No person shall place, leave, dump or permit to accumulate any garbage or rubbish in or upon any building, structure or place so that the same shall afford food and/or harborage for rodents. No person shall accumulate or permit the accumulation on any place, premises or on any open lot any lumber, building material, boxes, paper, rags, excess or dense vegetation, or any material that may be permitted to remain thereon that may serve as a rodent harborage, unless the same shall be placed on open racks that are elevated not less than eighteen inches above the ground and evenly piled or stacked, or otherwise made reasonably unsuitable as a rodent harborage by such manner as may be approved by the chief of environmental health."

You are further notified that pursuant to **Berkeley Municipal Code 11.36.030,** "...the existence of the following condition is declared to constitute an imminent health hazard: the discharge of sewage, garbage or any other organic filth into or upon any place in such a manner that transmission of infective material to human beings may result therefrom."

You are further notified that pursuant to **Berkeley Municipal Code 11.36.050,** "[e]ach imminent health hazard as defined in this chapter is declared to be a public nuisance and may be abated as provided in Sections 11.40.130 through 11.40.160 [describing emergency abatement]."

You are further notified that pursuant to **Berkeley Municipal Code 17.20.030,** "Except as otherwise expressly exempted below, it is unlawful to discharge any matter except stormwater into the storm drain system."

You are further notified that pursuant to **Berkeley Municipal Code 17.20.050,** "Any person engaged in activities which will or may result in pollutants entering the storm drain system shall undertake all practicable measures to reduce or prevent the contamination of stormwater by pollutants. Such measures shall include, but are not limited to, adherence to the following requirements:...A. *Littering prohibited.* No person shall throw, deposit, leave, maintain, keep, or permit to be thrown, deposited, placed, left or maintained, any refuse, rubbish, garbage, or other discarded or abandoned objects, articles, or accumulations, in or upon any street, alley, sidewalk, storm drain, inlet, catch basin, conduit or other drainage structures, business place, or upon any public or private lot of land in the City, so that the same might be or become a pollutant that enters the storm drain system; provided however, that nothing in this section shall be construed to prohibit the disposal of garbage, rubbish or other waste in a lawful manner as provided in Berkeley Municipal Code Chapter 11.16 (Waste Collection and Disposal) or Chapter 12.32 (Refuse Disposal), or the disposal of recycled materials in the manner provided for pursuant to Chapter 12.36 (Recycled Materials Collection Program), or the disposal of garbage, rubbish or other waste in lawfully established dumping grounds."

## SIDEWALK VIOLATION:

You are hereby notified that pursuant to **Berkeley Municipal Code 14.48.020,** "It is unlawful for any person to place or cause to be placed anywhere upon any sidewalk or roadway, any object which obstructs, restricts, or prevents the use of any portion of such sidewalk or roadway."

You are further notified that pursuant to **Berkeley Municipal Code 14.48.120 and Administrative Regulation 10.2,** (1) "TNC Objects are prohibited on Sidewalks in Residential Districts, except Objects in Transit pursuant to BMC §14.48.030 or as otherwise specifically authorized by the BMC"; (2) In Commercial and Manufacturing Districts, TNC Objects shall not be "left unattended for more than 2 hours," "placed in parklets," "interfere with access to and use of driveways, crosswalks, bus benches, bus stops, transit stops, bicycle racks, fire hydrants, faucet bibs, utility boxes, public art installations, mailboxes, ATM machines, embedded trap doors, parking meters, parking payment machines, refuse or recycling cans, or pursuant to a City permit, construction materials, newspaper racks, or sidewalk café seating"; "placed in a location that interferes with access for individuals with disabilities such as curb and wheelchair ramps", "in a location where they . . . obstruct, restrict, or hinder visibility of traffic devices or signs," "adjacent to any blue or white curb," "on a Sidewalk directly in front or within three feet of either side of a building entrance," or "within a BART Access Corridor, except objects in transit per 14.48.030." Pursuant to Administrative Regulation 10.2, enforcement may include reducing the footprint of TNC Objects to a 9-square-foot footprint.

### FOR THESE VIOLATIONS, YOU ARE HEREBY ORDERED TO:
By or before Sept 4, 2023, eliminate all trash/debris, any items creating a rodent harborage or other health hazards, and reduce your possessions to a 9-square-foot footprint.

The City of Berkeley will discard items you no longer wish to keep at your request. The City can temporarily store a limited amount of certain types of personal property up to 90 days, depending on value. However, **please ensure that you keep with you all necessary personal belongings (medications, identification, electronics, wallets), items of value, clean and unsoiled shelter items, and items of special importance to you**. Personal property left unattended may be collected and stored pursuant to the City's policy, if it meets certain requirements, described in more detail below:

1. **Personal property that** *may* **be stored up to 90 days** includes property of a personal nature such as identification; photos/photo albums; tents, sleeping bags, bedding (which is deemed to be in serviceable condition); luggage, backpacks, purses; clothing; documents (together in a packet bound or secured in some way); jewelry; medication; eyewear; electronic equipment; tools; bicycles and other non-motorized methods of transportation which are in working order.

2. **Items that will not be stored and are subject to disposal if left on public property at the time of the abatement include but are not limited to:** soiled or moldy items; loose or scattered papers; wet or damp clothing, bedding or sleeping bags; perishable food or personal products; personal hygiene products such as toothbrushes or hairbrushes; bike carcasses and parts; mattresses, futons, furniture; shopping carts (items easily identified as personal belongings and meeting the criteria for storage may be stored); broken or disassembled items or items stripped of parts; weapons; items that attract rodents or insects (containers for recycling or food storage); hazardous or explosive items such as gasoline cans, propane tanks, batteries. **Property that is so entangled with hazardous material that it is unsafe for City staff to sort through** (i.e., visible presence of needles, rodents, bodily waste, etc.) **will not be sorted and stored and will be subject to disposal.**

Unattended property will be handled in accordance with City policy. Individuals who wish to reclaim their property may call "311" to contact the City's Customer Service Center during regular business hours (Monday – Friday, 9:00 AM to 3:00 PM), or call (510) 981-2489 or (510) 981-CITY. Alternatively, information regarding retrieval of unattended and stored property is available in the lobby of the Berkeley Civic Center, 2180 Milvia Street, Berkeley, during regular business hours.

Vehicles may be subject to tow and impound if authorized by the Vehicle Code and community caretaking needs.

**FAILURE TO COMPLY:**
Failure to comply may result in the City abating the unsafe and hazardous conditions pursuant to BMC Chapter 11.40. **The City prefers not to cite or arrest in order to gain your compliance with this notice. However, absent voluntary compliance, failure to comply may result in citations and/or arrest.**

**RIGHT TO APPEAL:**
You may appeal the abatement as described in this Notice under BMC 11.40.150. To do so, you must file an appeal with the City Manager no later than ten days (10) from the date of this Notice. However, because of the imminent health hazards at this location, any request for a hearing will not prevent the city from abating the hazards as soon as possible beginning Sept 4, 2023, if you do not comply prior to that date. Failure to file an appeal will constitute a waiver of your right to an administrative hearing to contest the Notice and any determination contained therein.

Any appeal may be filed with the City Manager at:
    City of Berkeley
    City Manager's Office
    2180 Milvia Street
    Berkeley, California 94704

Appeals may be filed in person, by mail, or by facsimile to (510) 981-7099.

**Services**
If you are interested in shelter and/or other services, please reference the attached resources sheet (Attachment 1).

Attachment 1:

The City of Berkeley provides a number of services that you are encouraged to utilize:

**Storage:** Lockers: Dorothy Day House **Hours:** Monday-Friday, 8:00am – 2:00pm Saturday, 8:00am–12:00pm Sunday, 9:00am–12:00pm **Location:** 1931 Center Street.

**Shelter:** If you are interested in a shelter placement, please tell the staff from the Homeless Response Team so they can make a referral.

If you are interested in shelter and/or housing,

_Unsheltered adults_:
- Contact BACS at 510-495-0131, email housinghub@bayareacs.org or walk in at 2809 Telegraph Ave, 9:00am-12:00pm, Mon, Wed, Fri

_Unsheltered families_ –
Contact Women's Daytime Drop-in Center call 510-548-2884, email help@womensdropin.org, or walk in at 2218 Acton St. 8:00am-4:00pm, Mon-Fri

Free meals are available throughout Berkeley during the week, including the following:
- Berkeley Food and Housing Project. **Hours:** Monday-Friday, 3:30pm-4:3pm **Location: 2140 Dwight Way**
- Dorothy Day House Berkeley Community Resource Center. Breakfast at 8:30am and Lunch at 12:30pm. **Location:** 1931 Center St.
- McGee Avenue Baptist Church. **Hours:** Monday, Wednesday, and Friday, 12:00n-1:00pm. **Location:** 1640 Stuart @ McGee. **Contact:** (510) 843- 1774.
- St. Paul's AME Church. **Hours:** 3rd Tuesdays, 11:00am-12.30pm. **Location:** 2024 Ashby Avenue @ Adeline **Contact:** (510) 848- 2050.
- South Berkeley Community Church. **Hours:** Thursdays, 12:00n-1pm. **Location:** 1802 Fairview street @ Ellis.

Weekend meals:
- All Souls Episcopal Church. **Hours:** every 2nd Sun.@ 4:00pm. **Location:** 2220 Cedar Street @ Spruce **Contact:** (510) 848- 1755.
- St. Mary Magdalene. **Hours:** 1st & 4th Sundays @ 2:30pm. **Location:** 2005 Berryman St. @ Henry St. **Contact:** (510) 526-4811

Shower, laundry and daytime respite available in Berkeley:
- The Berkeley Community Resource Center offers showers and laundry. **Location:** 1931 Center Street (entrance in the front) **Hours:** 8:00am–12:00n, 7 days a week.   Go to 1931 Center to make an appt for the following day.
- Berkeley Drop-In Center: storage lockers, packaged meals, free phone services, message services, counseling, and more. **Location:** 3234 Adeline St. **Hours:** Monday – Friday, 9:00am - 3:00pm.
- Women's Daytime Drop-In Center: provides bag meals and referrals to community services, and more to women and children. **Location:** 2218 Acton St.

**Hours:** Monday – Friday, 8:00am-4:00pm (closed 1st Fridays). **Contact**: (510) 548-2884

- West Campus Shower Program: **Location**: 2100 Browning St. **Hours**: 7 days a week from 7:15pm-8:15pm
- Dignity on Wheels provides shower and laundry services. **Location**: 2nd and Cedar near 601 Cedar. **Hours**: 3pm-7pm on Sundays

Medical Services:

- Suitcase Clinic/ASUC Youth/LGBTQ+ Clinic. **Hours:** Mondays, 6:00pm– 9:00pm. **Location:** 2300 Bancroft Way **Contact:** (510) 423-3303.
- Suitcase Clinic/ASUC General Clinic. **Hours:** Tuesdays, 6:15pm–9:00pm **Location:** 2407 Dana Street **Contact:** (510) 269-7242.
- Options Recovery Services provides daytime treatment program and mental health clinic services for clients who have co-occurring addictive disorders. **Location:** 1931 Center Street (entrance in the front) **Contact:** (510) 666-9552 **Hours:** 9:00am–5:00pm, Monday–Friday, Saturday 10:00am-2pm, closed on Sunday.

**For more service referrals, contact 211 or (888) 886-9660.**

# EXHIBIT B





**Personal property that may be stored up to 90 days** includes property of a personal nature such as identification; photos/photo albums; tents, sleeping bags, bedding (which is deemed to be in serviceable condition); luggage, backpacks, purses; clothing; documents (together in a packet bound or secured in some way); jewelry, medication; eyewear; electronic equipment; tools; bicycles and other non-motorized methods of transportation which are in working order.

**Items that will not be stored and are subject to disposal if left on public property unattended include but are not limited to:** soiled or moldy items; loose or scattered papers, wet or damp clothing, bedding or sleeping bags; perishable food or personal products; personal hygiene products such as toothbrushes or hairbrushes; bike carcasses and parts, mattresses, futons, furniture; shopping carts (items easily identified as personal belongings and meeting the criteria for storage may be stored); broken or disassembled items or items stripped of parts; weapons; items that attract rodents or insects (containers for recycling or food storage); hazardous or explosive items such as gasoline cans, propane tanks, batteries.

Unattended property will be handled in accordance with City policy. Individuals who wish to reclaim their property may call "311" to contact the City's Customer Service Center during regular business hours (Monday – Friday, 9:00 AM to 3:00 PM), or call (510) 981-2489 or (510) 981-CITY. Alternatively, information regarding retrieval of unattended and stored property is available in the lobby of the Berkeley Civic Center, 2180 Milvia Street, Berkeley, during regular business hours.

You are hereby notified that pursuant to **Berkeley Municipal Code 14.48.020**, "It is unlawful for any person to place or cause to be placed anywhere upon any sidewalk or roadway, any object which obstructs, restricts, or prevents the use of any portion of such sidewalk or roadway."

You are further notified that pursuant to **Berkeley Municipal Code 14.48.120 and Administrative Regulation 10.2**, (1) "TNC Objects are prohibited on Sidewalks in Residential Districts, except Objects in Transit pursuant to BMC §14.48.030 or as otherwise specifically authorized by the BMC"; (2) In Commercial and Manufacturing Districts, TNC Objects shall not be "left unattended for more than 2 hours," "placed in Parks," "interfere with access to and use of driveways, crosswalks, bus benches, bus stops, transit stops, bicycle racks, fire hydrants, faucet bibs, utility boxes, public art installations, mailboxes, ATM machines, embedded trap doors, parking meters, parking payment machines, refuse or recycling cans, or pursuant to a City permit, construction materials, newspaper racks, or sidewalk café seating"; "placed in a location that interferes with access for individuals with disabilities such as curb and wheelchair ramps," "in a location where they . . . obstruct, restrict, or hinder visibility of traffic devices or signs," "adjacent to any blue or white curb," "on a Sidewalk directly in front or within three feet of either side of a building entrance," or "within a BART Access Corridor, except objects in transit per 14.48.030."