**Sabyl Landrum, SBN 303852**
**Brigitte Nicoletti, SBN 336719**
EAST BAY COMMUNITY LAW CENTER
2001 Center St, 4th Floor
Berkeley, CA 94704
Tel: (510) 548-4040
bnicoletti@ebclc.org

**Thomas Zito, SBN 304629**
**Melissa Riess, SBN 295959**
**Jameelah Najieb, SBN 349644**
DISABILITY RIGHTS ADVOCATES
2001 Center St, 3rd Floor
Berkeley, CA 94704
Tel: (510) 665-8644
mriess@dralegal.org

[*Additional counsel listed on following page*]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| YESICA PRADO, LUCIAN JEFFORDS, ERIN SPENCER, ANGEL KENNETT, AMBER WHITSON, RUFUS LEE WHITE JR., JERMAINE WHITE, BARBARA GEIB, MONIQUE WILLIAMS, and WHERE DO WE GO BERKELEY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>        Defendants. | Case No. 23-cv-04537-EMC<br><br>**PLAINTIFFS' EMERGENCY MOTION FOR ENFORCEMENT OF THIS COURT'S ORDER (ECF NO. 26) AND FOR AN ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT ISSUE AND OTHER RELIEF**<br><br>Date:    December 21, 2023<br>Time:    1:30 p.m.<br>Place:   Videoconference<br>Judge:  Edward M. Chen |

**Osha Neumann, SBN 127215**
LAW OFFICES OF OSHA NEUMANN
1840 Woolsey St
Berkeley, CA 94703-2453
Phone: 925-452-7603
Email: oshaneumann@oneumannlaw.com

1

## MOTION AND NOTICE OF MOTION

2       TO ALL PARTIES AND THE COURT, PLEASE TAKE NOTICE that at 1:30 p.m. on

3    December 21, 2023 or as soon thereafter as the matter may be heard, Plaintiffs Yesica Prado,

4    Lucian Jeffords, Erin Spencer, Angel Kennett, Amber Whitson, Rufus Lee White Jr., Jermaine

5    White, Barbara Geib, Monique Williams, and Where Do We Go Berkeley (collectively

6    "Plaintiffs") will move the Court to enter an order 1) finding that the Defendant, City of

7    Berkeley violated this Court's September 27, 2023 order (ECF No. 26), 2) issue an order to show

8    cause why sanctions should not issue against Defendant City of Berkeley, and 3) for any other

9    order or measure to ensure compliance with the September 27, 2023 order.

10      The motion is based upon this Notice of Motion and Motion, the accompanying

11   Memorandum of Points and Authorities, the concurrently filed declarations of Erin Spencer

12   ("Spencer Decl."), Jameelah Najieb ("Najieb Decl."), and Brigitte Nicoletti ("Nicoletti Decl."),

13   and exhibits to those declarations, as well as all pleadings and papers on file in this action, and

14   any oral argument this Court permits.

15

## MEMORANDUM AND POINTS OF AUTHORITY

16   **I.    INTRODUCTION**

17      The City of Berkeley has prevented its unhoused residents, including Plaintiff Erin

18   Spencer, from returning to their previous camping areas after it performed a noticed abatement

19   on Harrison Street between 7th and 8th Streets on November 7, 2023. After completing the

20   November 7 abatement, the City erected fences blocking off the north side of the Harrison Street

21   sidewalk, preventing Mr. Spencer and others who had been camping there prior to the abatement

22   from returning. This action violates this Court's Order Dissolving the TRO and the City's own

23   notice that was posted prior to the abatement. As a result, Mr. Spencer decided to set up his tent,

24   that was issued to him by the City, on the South side of Harrison Street, the only available space

25   due to the fencing. Ms. Prado and Counsel for Mr. Spencer were informed by City Manager

26   Peter Radu that Mr. Spencer was allowed to camp on the South side of Harrison Street.

27      Then, on the afternoon of November 9, 2023, the City posted notices with the subject line

28   "Notice of Encampment Closure," on only Mr. Spencer's tent. This occurred, yet again, in the

afternoon on a day before a holiday weekend, with the closure to take place on November 14, 2023. This gave Mr. Spencer less than two business days of notice.

Plaintiffs request that the Court enforce the September 27 Order Dissolving the TRO by (1) ordering the City to remove the fences it erected, preventing Mr. Spencer from returning to the area where he had previously been living, (2) enjoining the City from conducting the encampment closure on November 14, due to the inadequacy of the notice, and (3) issuing an order to show cause as to why the City should not be sanctioned based on this willful violation including payment of Plaintiffs' attorneys fees and costs, and 4) any other relief the Court deems appropriate.

## II.    STATEMENT OF FACTS

### A.    Procedural History

On September 1, 2023, the Friday before Labor Day weekend, Defendant City of Berkeley posted vague and confusing notices detailing a planned abatement of the homeless encampment located on Harrison Street between 8th and 7th Streets in Berkeley, California. The notice was directed at "Persons Encamped and Vehicles Parked on Harrison Street between 7th Street and 8th Streets." Nicoletti Decl. ¶ 3 and Exh. A. On September 3, 2023, Plaintiffs filed a Complaint and Motion for Temporary Restraining Order based on the likely irreparable harm they would face if the abatement took place based on the notice and the City's policies and practices on managing encampments. ECF Nos. 1 and 2.

On the morning of September 5, 2023, Judge Yvonne Gonzalez Rogers granted Plaintiffs' Motion for Temporary Restraining order, stating, "**UNTIL OTHERWISE ORDERED,** defendant, its employees, agents and/or any other person or entity acting with defendant or on its behalf are **RESTRAINED AND ENJOINED** from conducting an abatement of the area surrounding 8th and Harrison, Berkeley, California." ECF No. 11. The Court found that "[t]he potential loss of personal property, community, and safety, particularly in the absence of access to resources and services is an irreparable harm. It is in the public interest that members of the community, including the unhoused, are not endangered or parted from their homes and community without cause." The TRO restrained Defendant City of Berkeley from acting until

1   September 15, 2023. ECF No. 11.

2           Later, on September 5, 2023, Judge Edward Chen modified the Restraining Order,

3   extending the restriction of the actions of Defendant City of Berkeley through September 27,

4   2023, when a hearing date for a preliminary injunction would occur. ECF No. 15.

5           **B.      The Court's Order Dissolving the TRO**

6           At the hearing on the Temporary Restraining Order and Preliminary Injunction on

7   September 27, 2023, the City made representations to the Court that the abatement noticed on

8   September 1, 2023, was a temporary cleaning and that residents would be allowed to return to

9   the locations where they had been residing prior to the cleaning. Order Dissolving TRO, ECF

10  No. 26 at 13. The City Attorney also made no objection to posting notice during weekdays so the

11  notice period would fall during week days when service providers are available. *Id*. Based on

12  these representations, the Court found that the balance of hardships tipped in the City's favor and

13  dissolved the TRO. *Id.* Further, the Court provided that the City post a notice that "shall specify

14  that people are allowed to return to the area to camp after the abatement is complete" and that the

15  72-hour notice period should only include weekdays. *Id*. at 16.

16          On October 30, 2023, the City posted notices directed to Mr. Spencer by name on his

17  shelter located on the North side of Harrison Street between 8th and 7th Streets that stated that the

18  abatement would occur between Tuesday, November 7, 2023 and Thursday, November 9, 2023.

19  Nicoletti Decl. ¶ 4 and Exh. B. The notice further stated, "[a]fter the completion of this

20  operation, pursuant to the order of the Court, you will be allowed to return to/remain in this

21  location to camp if you so choose." *Id.*

22          **C.      The November 7, 2023 Abatement and the Fencing of Harrison Street**

23          On November 7, 2023, the City arrested Mr. Spencer within the first fifteen minutes of

24  the abatement for a violation of Penal Code Section 647(e), for "illegal lodging" as he was

25  actively trying to exit the area of the noticed abatement with his belongings on a mobile cart. In

26  advance of the November 7 abatement, Mr. Spencer had taken his essential belongings and

27  moved to a different location outside of the noticed area. He was taken to Berkeley Jail. Spencer

28  Decl. ¶¶ 2-5. The City then proceeded to destroy Mr. Spencer's original shelter, along with his

1    new camp and the majority of his belongings, despite having noticed the abatement of the new

2    camp less than 24 hours previously. Nicoletti Decl. ¶¶ 5, 7 and Exh. C; Spencer Decl. ¶ 6; Najieb

3    Decl. ¶ 4. At the completion of the cleaning of Harrison Street on November 7, 2023, the City

4    erected fences to enclose the sidewalk and prohibit individuals from returning to where they had

5    been previously residing. Nicoletti Decl. ¶ 9; Najieb Decl. ¶¶ 4-5; Spencer ¶ 7..

6          When asked where Mr. Spencer could go once he was released from jail, Peter Radu,

7    Assistant to the City Manager pointed to the South side of Harrison street between 8th and 7th

8    streets and stated "there is room over there" in front of Plaintiffs' counsel and Plaintiff Yesica

9    Prado. Najieb Decl. ¶ 6. When Mr. Spencer returned to Harrison Street from jail, he was given a

10   tent by city officials after Plaintiffs' counsel and Mr. Spencer himself made repeated requests to

11   city officials. Najieb Decl. ¶ 7;  Spencer Decl. ¶ 8. Mr. Spencer set up his tent on the South side

12   of Harrison Street between 8th and 7th Streets on the evening of November 7, 2023. Spencer

13   Decl. ¶ 10. Several other residents who had not received adequate shelter offers from the City

14   and who had not been given tents to replace their structures that were destroyed have also taken

15   shelter in Mr. Spencer's tent as it is their only option. Spencer Decl. ¶ 11; Nicoletti Decl. ¶ 12).

16         **D.      The Encampment Closure Noticed for November 14, 2023**

17         On the afternoon of November 9, 2023, the day before Veteran's Day weekend, city

18   officials posted three copies of a notice on the tent they had given to Mr. Spencer and the

19   belongings that he and the residents who are staying with him had placed outside the tent.

20   Nicoletti Decl. ¶ 13 and Exh. F; Spencer Decl. ¶ 12. The notice is titled, "Notice of Encampment

21   Closure – Tuesday Nov 14th." Nicoletti Decl., Exh. F. The notice is addressed to "[p]ersons

22   encamped on the South side of Harrison Street between 8th and 7th Streets." The reason for the

23   closure is an alleged violation of Berkeley's sideway policy as specified in BMC 14.48.020 and

24   14.48.120. *Id.*

25         On the evening of November 9, 2023, Plaintiffs' counsel wrote an email to the City

26   Attorney alerting them that maintaining the fences preventing Mr. Spencer from returning to his

27   previous residence is a violation of the Court's order and stating that the enforcement of the

28   noticed closure would be in violation of the rights of Mr. Spencer and the other residents.

1  Nicoletti Decl. ¶ 14 and Exh. G. At 4:50 p.m., on November 10, 2023, Marc Shapp from the

2  City's Attorneys' Office responded and stated "[t]he City Attorney's Office is closed today in

3  observance of Veterans Day. Mr. Spencer was allowed to return to Harrison Street, which is

4  what the September 27 order requires." Nicoletti Decl. ¶ 15.

5          As of the morning of November 13, 2023, the City had still not removed the fences

6  placed on the North side of Harrison street, rendering it impossible for Mr. Spencer to return to

7  his previous location. Nicoletti Decl. ¶ 17. This is in direct violation of the City's representation

8  to the Court that the abatement was a temporary cleaning and residents could return after the

9  abatement. This Court's Order issued on September 27, 2023, states, "the notice shall specify

10  that people are allowed to return to the area to camp after the abatement is complete," and

11  Defendant's own notice from October 30, 2023, which indicated that after the abatement had

12  taken place, Mr. Spencer would be allowed to return. ECF No. 26, p. 16; Nicoletti Decl. ¶ 4 and

13  Exh. B.

14          Mr. Spencer has nowhere else to go. Spencer Decl. ¶¶ 9-10, 13; Nicoletti Decl. ¶¶ 14-17.

15  His previous shelter has been destroyed and his belongings thrown away. Spencer Decl. ¶ 6;

16  Nicoletti Decl. ¶ 7.  The City indicated that he should move to his current location. Najieb Decl.

17  ¶ 6.  He was and continues to be unable to return to his previous location due to fences erected

18  by the City. Nicoletti Decl. ¶ 17. If the City moves forward with the abatement on Tuesday,

19  November 14, Mr. Spencer will once again be deprived of his shelter, his belongings, and left

20  with nowhere to go. *Id*. The pictures below depict the North side of Harrison Street between 8th

21





22

23

24

25

26

27

28

and 7th Streets where Mr. Spencer used to reside (left), and his new location on the South Side of

Harrison Street where he was directed to go by Peter Radu (right).

### III.    ARGUMENT

#### A.    The Court Should Order the City to Comply with Conditions Set Out in its Order issued September 27, 2023.

A party seeking an order of contempt for the violation of a court order must show by

clear and convincing evidence that the enjoined party disobeyed a "specific and definite court

order by failure to take all reasonable steps within the party's power to comply." *In re Dual-*

*Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt

'need not be willful,' and there is no good faith exception to the requirement of obedience to a

court order." *Id.* (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th

Cir. 1987)).

The City failed to comply with several essential elements of the Court's order dissolving

the TRO. As a result, it has threatened Mr. Spencer and his neighbors again with the irreparable

harm that the September 5 TRO was in place to prevent.

First, the City did not allow Mr. Spencer to return to the area where he had been camping

as required by the Court's Order. The Court specifically conditioned the dissolution of its order

on the representations from the City of Berkeley that the residents of Harrison Street would be

allowed to return to the locations where they were residing after the temporary abatement and

cleaning took place. ECF No. 26 at 13. The Court further required the City to post a notice that

"shall specify that people are allowed to return to the area to camp after the abatement is

complete." ECF 26 at 16. The City did in fact post notices directed to Mr. Spencer stating he

could return to his previous location. Nicoletti Decl. Exh. B. But, because the City erected fences

around the area where Mr. Spencer and others had been living, the City is preventing Mr.

Spencer (and anyone else) from returning in violation of the order.

Second, the Order stated that "the City shall help campers move . . . their belongings . . .

to storage." ECF No. 26 at 17. However, in the event, the City engaged in minimal efforts to

ensure that individuals were able to store their items. When Mr. Spencer attempted to move his

belongings himself, he was arrested and charged with illegal lodging.  Spencer Decl. ¶ 2-3.   The City arrested him before he was able to engage with the City regarding which belongings could be stored. *Id.* The City destroyed all of Mr. Spencer's belongings that he was attempting to move.  Spencer Decl. ¶ 6; Najieb Decl. ¶ 4.  Plaintiffs' counsel has requested that the City accommodate Mr. Spencer in the upcoming abatement on November 14.  Nicoletti Decl. ¶ 16, Exh. H.

Third, the Order states that the "Abatement cannot begin unless Plaintiffs are given seventy-two hours' notice of the abatement." ECF No. 26 at 16. After receiving the notice of abatement on his original shelter on Harrison between 7th and 8th Street, Mr. Spencer spent the weekend moving to another location on Harrison between 6th and 7th Street. Spencer Decl. ¶ 11. On Monday, November 6, 2023, the City posted notices on these structures informing him that they, too, would be subject to abatement. Nicoletti Decl. Exh. C. Less than 24 hours after posting these notices, the City arrived to begin the abatement and destroyed Mr. Spencer's new camp. Nicoletti Decl. ¶¶ 5-9.

As a result of the City's failure to comply with the Court's September 27 Order, Mr. Spencer and several of the residents who had been living on the North side of Harrison Street between 8th and 7th Streets prior to the abatement still cannot return to their previous locations. Although the City indicated that Mr. Spencer could move his tent across the street to the south side of Harrison, it has now noticed an "encampment closure" on just his tent on November 14, 2023.

These notifications and actions by the City are in clear violation of this Court's September 27 order.  The November 14 notice again provides Mr. Spencer with less than 72 hours of notice (excluding the holiday weekend) which is also in violation of the Order.

Because the City has violated the Court's Order Dissolving the TRO by preventing Plaintiff Erin Spencer and other residents from returning to their previous locations after the noticed abatement period, and by noticing a new closure at 8th and Harrison the day before a holiday weekend, the Court should take any necessary actions to enforce its Order Dissolving the TRO, including ordering sanctions in the form of preventing the City from conducting its

1    November 14, 2023 encampment abatement, requiring further abatement actions to be pre-

2    approved by the Court, and issue an order to show cause why the City should not be sanctioned

3    and pay for Plaintiffs' attorneys fees and costs incurred that were required to seek compliance

4    with the Court's order.  sanctions and other relief, including attorneys' fees and costs.

5        **B.**    **The Court Should Grant Plaintiffs' Request for Sanctions and Other Relief.**

6        "It is firmly established that "[t]he power to punish for contempt is inherent in all courts."

7    *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson*, 19 Wall. 505,

8    510 (1874).) "The Court has the ability to fashion an appropriate sanction for conduct which

9    abuses the judicial process." *Id.* at 44–45. Civil contempt sanctions are "those penalties designed

10   to compel future compliance with a court order." *Int'l Union, United Mine Workers of Am. v.*

11   *Bagwell*, 512 U.S. 821, 827 (1994). "Because civil contempt sanctions are viewed as nonpunitive

12   and avoidable, fewer procedural protections for such sanctions have been required." *Int'l Union*,

13   512 U.S. at 831. "Neither a jury trial nor proof beyond a reasonable doubt is required." *Id.*

14       A court may also assess attorney's fees as a sanction for the "willful disobedience of a

15   court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (internal citations omitted). A

16   court may also assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly,

17   or for oppressive reasons." *Id.* at 45-46 (internal citations omitted).

18       By refusing to assist Mr. Spencer, arresting him when he was attempting to move his

19   belongings, destroying his property without allowing him to move it, fencing off the North

20   section of Harrison street, and posting a new Notice of Closure at 8th and Harrison on the

21   belongings of Plaintiff Erin Spencer on the day before a holiday weekend, with a scheduled

22   enforcement day of the Tuesday following the three day weekend, the City has disobeyed a

23   "specific and definite court order by failure to take all reasonable steps within the party's power

24   to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.

25   1993).

26       The Court's order was clear as to all of these violations.  It clearly states that the City

27   must post notices so that the notice period would provide 72-hour notice during weekdays. The

28   Court reasoned that the balance of the hardships weighs in Plaintiffs' favor unless they have at

1   least 72 hours of notice over weekdays. ECF No. 26 at 16. The City has once again posted

2   notices the afternoon of day before a holiday weekend, forcing Mr. Spencer and residents to

3   scramble to alert service providers and seek assistance before the holiday weekend, and

4   preventing them from utilizing services that would normally be open to assist them.  The City

5   "shall help campers to move themselves or their belongings . . .The Notice . . . shall provide

6   instructions to campers on how to designate property for storage." *Id.*  The City did not help Mr.

7   Spencer move or allow him to store property, instead it arrested Mr. Spencer when he was

8   moving his belongings.  The Notice "shall specify that people are allowed to return to the area to

9   camp after the abatement is complete." *Id.* Although the abatement is complete, the City is not

10  allowing people to return.  These actions have harmed and continue to harm Plaintiffs because of

11  the City's willful violation of our clients' rights and the order of this Court.  These actions are

12  also requiring Plaintiffs' counsel to expend resources and incur fees and costs to seek

13  enforcement of the Court's order.

14       Therefore, we request the Court enforce its order by requiring the City to rescind the

15  notices posted November 9, 2023, because they do not give 72-hour notice. We further request

16  that the Court issue an order to show cause why the City should not be sanctioned and award

17  Plaintiffs attorneys' fees and costs in order to compel future compliance. *Int'l Union*, 512 U.S. at

18  827. By openly defying its own statements to the Court that it did not object to posting notices

19  during weekdays and the Court's order, the City has demonstrated clear disregard for the

20  authority of the Court. Further, by engaging in the same practice of noticing an action the day

21  before a holiday weekend that this Court has already censured, when residents cannot access

22  services, and forcing Plaintiffs' counsel to act immediately to prevent irreparable harm from

23  befalling our clients, the City is acting vexatiously and in bad faith. *Chambers*, 501 U.S. at 45.

24  **IV.    CONCLUSION**

25       For the foregoing reasons, the Court should grant this motion.

26

27  Dated: November 13, 2023                    Respectfully submitted,

28                                              DISABILITY RIGHTS ADVOCATES

By: /s/ Melissa Riess

EAST BAY COMMUNITY LAW CENTER

By: /s/ Brigitte Nicoletti

*Attorneys for Plaintiffs*