UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAWANDA PARNELL, et al.,

          Plaintiffs,

      v.

CITY OF BERKELEY,

          Defendants.

Case No.  23-cv-06379-EMC

**TEMPORARY RESTRAINING ORDER**

Re:  Dkt. No. 2

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order, as well as the City's Opposition.  Having considered the parties' filings, the Court GRANTS the application for a temporary restraining order until a hearing can be held on Tuesday, December 19, 2023.

Plaintiffs Michael Douglas and Lawanda Parnell are unhoused and live in tents around 8th and Harrison Streets in Berkeley, California.  Plaintiff Merced Dominguez lives in an RV near the same intersection.  Plaintiffs allege that on December 5, 8, and 11, 2023, the City posted several notices stating that the unhoused residents in the area would be subject to an encampment closure action beginning December 12, 2023.  The notices were posted on 8th Street between Cordonices Creek and Harrison Street, on property located on the East side of 8th Street between Harrison and Gilman Streets, and on the East and West side of 8th Street between Harrison Street and the UC Village.

Afterhours, on December 11, 2023, the Plaintiffs filed a Motion for a Temporary Restraining Order requesting that the Court enjoin the City from closing the 8th and Harrison encampment in Berkeley and from removing the residents and their possessions from the encampment.

On December 12, 2023, this Court issued an Order to Maintain the Status Quo.  By the

1    time the City of Berkeley received notice of the Order, it had mostly closed the encampment.  Mr.

2    Douglas and Ms. Parnell have since reinstalled their respective encampments at 8th and Harrison.

3        1.  Plaintiffs' Claims are Not Moot

4        The City contends that the case is moot and that the Court should not issue the requested

5    TRO because, at the time the Order to Maintain the Status Quo was issued, Plaintiffs Parnell and

6    Douglas had already vacated the area.  Opp'n at 6.  However, "[i]n deciding a mootness issue, the

7    question is not whether the precise relief sought at the time the application for an injunction was

8    filed is still available.  The question is whether there can be *any* effective relief."  *Oregon Nat.*

9    *Resources Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006) (quoting *Nw.*

10   *Environmental Defense Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988)).  A case is still

11   live "when the challenged government action … has not evaporated or disappeared, and … casts

12   … a substantial adverse effect on the interests of the petitioning parties."  *Feldman v. Bomar*, 518

13   F.3d 637, 642 (9th Cir. 2008) (quoting *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012,

14   1015 (9th Cir. 1990).).  In *Oregon Natural Resources Council*, a logging project was challenged,

15   but the challenger failed to obtain a preliminary injunction from the district court, and the logging

16   proceeded.  470 F.3d at 820.  The Ninth Circuit held that there was still a live controversy

17   because, although the harvested trees could not be restored, there were still remedies available

18   such as addressing the impact of the logging on the neighboring areas.  *Id*. at 821, 823.

19       Here, even though Plaintiffs moved out of the 8th and Harrison encampment, the City's

20   challenged action still presents a "substantial adverse effect on the interests of the petitioning

21   parties," because Plaintiffs have returned to their encampment, continue to have nowhere to go,

22   and the City still seeks their eviction.  *See Feldman*, 518 F.3d at 642.  Because Plaintiffs can still

23   be granted effective relief, this case is not moot.  *See Oregon Nat. Resources Council*, 470 F.3d at

24   820.  Finding a live controversy, the Court now turns to whether Plaintiffs meet the standard for a

25   TRO.

26       2.  Plaintiffs' Allegations Establish a Basis for a TRO Until a Hearing Can be Held

27       The traditional *Winter* standard for preliminary relief requires the movant to show that

28   (1) it "is likely to succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence

United States District Court
Northern District of California

2

of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has created a "sliding scale" variant of the same standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Applying the sliding scale here, Plaintiffs have shown that there are serious questions going to the merits, i.e., whether the City's planned course of action—evicting disabled, unhoused individuals from a site without indicating where they may lawfully relocate and without addressing their respective disabilities and limitations—violates Plaintiffs' constitutional rights. *See Blain v. Cal. Dep't of Trans.*, 616 F. Supp. 3d 952, 955 (N.D. Cal. 2022) (finding "serious questions that the state will violate their constitutional rights by placing them in increased danger when it removes them at short notice from the encampment without adequate plans to provide shelter"), *order dissolved*, No. 3:22-CV-04178-WHO, 2022 WL 3702106 (N.D. Cal. Aug. 26, 2022); *Warren v. City of Chico*, No. 2:21-CV-00640-MCE-DMC, 2021 WL 2894648, at *7-8 (E.D. Cal 2021) (finding likelihood of success on the merits where the City's proposed relocation site was an " asphalt tarmac with no roof and no walls, no water and no electricity … afford[ing] no real cover or protection to anyone."); *Los Angeles All. for Human Rights v. City of Los Angeles*, No. LA CV 20-02291-DOC-KES, 2020 WL 2615741, at *13-15 (C.D. Cal. May 22, 2020) (finding likelihood of success on the merits because homelessness would be effectively criminalized if there is "no better option than to camp in hazardous areas."), *vacated by stipulation*, 2020 WL 3421782 (C.D. Cal. June 18, 2020). Accordingly, the Court finds that Plaintiffs have made an adequate showing as to the first *Winter* factor under the sliding scale approach.

The balance of hardships also tips sharply in Plaintiffs' favor. Mr. Douglas is disabled, struggles with anxiety, a bipolar disorder, and is legally blind in his right eye. Douglas Decl. ¶ 7;

United States District Court
Northern District of California

1    Supp. Douglas Decl. ¶ 10.[1]  He was told the only shelter he could use is the Old City Hall, which

2    he says he cannot access because of his disabilities.  *Id.* ¶¶ 10-11; Supp. Douglas Decl. ¶ 11.  He

3    states that after the closure, "I have no idea where I will go and have nowhere to go."  Douglas

4    Decl. ¶ 6.  Ms. Parnell also has a physical disability.  Parnell Decl. ¶ 4.  She falls down frequently

5    and has a nervous condition.  *Id.*  She cannot reside at Old City Hall because she cannot be in a

6    congregate shelter due to her nervous condition.  *Id.* ¶ 6.  She states: "if forced to leave I would

7    have no place to go."  Parnell Decl. ¶ 2.  If Mr. Douglas and Ms. Parnell, two disabled individuals,

8    are evicted during the winter, with no place to go, they will certainly suffer a severe hardship.

9           On the other hand, the hardships to the City are minimal.  After Plaintiffs are removed, the

10   City plans to fence-off the site of the encampment and make needed repairs.  Radhu Decl. ¶ 26.

11   Then, the owners of the abutting property at 930 Harrison Street will install a "planting strip."

12   Chen Decl. ¶ 3.  The TRO will only forestall the City and the property owner's plan until Tuesday,

13   December 19, 2023, when the Court can hold a hearing.  Delaying the cleaning project by six days

14   does not present a substantial hardship to the City.  Therefore, the Court finds that Plaintiffs have

15   satisfied this *Winter* factor.  *See Blain*, 616 F. Supp. 3d at 958 ("The balance of equities sharply

16   tilts in the plaintiffs' favor for a period long enough to give them adequate notice of the action,

17   time to make alternative plans, and time for the relevant governmental entities to help locate

18   shelter (as they have committed to trying).").

19          As to the two remaining *Winter* factors—whether the public interest favors preliminary

20   relief and whether Plaintiffs will suffer irreparable harm without it—Mr. Douglas and Ms. Parnell

21   have made the required showing.  Their declarations establish that they have no place to go, and

22   this Order grants preliminary relief only so that a hearing can be held on whether further relief is

23   warranted.  *See Blain*, 616 F. Supp. 3d at 958 ("Being exposed to safety and health threats by dint

24   of governmental action with short notice meets the irreparable-injury element.") (citation omitted);

25   *Janosko v. City of Oakland*, No. 3:23-CV-00035-WHO, 2023 WL 187499, at *4 (N.D. Cal. Jan.

26

27   _____
     [1] Mr. Douglas submitted two declarations—one handwritten and undated, and one typewritten
     dated September 20, 2023—in support of the motion for temporary restraining order.  The Court
28   refers to the handwritten declaration, dated as the "Douglas Declaration," and the typewritten
     declaration as the "Supplemental Douglas Declaration."

13, 2023) ("[A] short, defined delay in the planned evictions is in the public interest.").

On the record currently before the Court, Plaintiffs have demonstrated that there are serious questions going to the merits of their claims, that the balance of hardships tips sharply in their favor, and that they are likely to suffer irreparable harm absent preliminary relief, the granting of which is in the public interest. They have thus made the required showing for a TRO. The Court now addresses whether the TRO should extend to Ms. Dominguez.

3. Persons Affected by This Order

The City contends that Ms. Dominguez lacks standing to seek preliminary relief because the encampment closure did not apply to those residing in RVs or automobiles parked on the street, and as a result, Ms. Dominguez was not affected by it. Opp'n at 4. To establish standing, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560 (1992)). Here, Ms. Dominguez does not have an injury because she has not been asked to move her RV or leave the encampment site. Therefore, Ms. Dominguez lacks standing to seek relief in this action.

Accordingly, the relief granted in this Order applies to Mr. Douglas and Ms. Parnell, as they are properly named plaintiffs in the case at bar. At the same time, this case, *Parnell v. City of Berkeley*, is related to *Prado v. City of Berkeley*, No. 23-cv-04537, which is a class action on behalf of the 42 residents of the 8th and Harrison encampment at question here. In the instant motion for a temporary restraining order, it appears that Plaintiffs may have meant to assert the restraining order on behalf of the entire class of residents living at the encampment. Mot. at 2 ("Plaintiffs therefore seek a Temporary Restraining Order restraining defendant City of Berkeley from displacing the residents of 8th and Harrison until adequate shelter is available for them."). Though it is premature to decide whether Plaintiffs here meant to represent themselves or all of the residents at the encampment, the Court notes that it is the Court's "obligation … where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

United States District Court
Northern District of California

1    (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  The Court will therefore

2    revisit this issue at the hearing on this matter.

3                        **TEMPORARY RESTRAINING ORDER**

4            UNTIL OTHERWISE ORDERED, Defendant, its employees, agents and/or any other

5    person or entity acting with defendant or on its behalf are RESTRAINED AND ENJOINED from

6    conducting an abatement and closure of the area surrounding 8th and Harrison, Berkeley,

7    California.

8            **THIS TEMPORARY RESTRAINING ORDER IS EFFECTIVE IMMEDIATELY**.

9    It shall expire on Tuesday, December 19, 2023 at 3:00 pm, unless a further order based on good

10   cause is entered at a hearing to take place at that time before the Honorable Edward M. Chen via

11   Zoom webinar.

12           Unless otherwise stipulated, Plaintiffs may file a reply by 5:00 p.m. Monday, December

13   18, 2023.

14           **IT IS SO ORDERED**.

15

16   Dated: December 15, 2023

17

18   _____

19   **ARACELI MARTÍNEZ-OLGUÍN**
     **United States District Judge**

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California