United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YESICA PRADO, et al.,

Plaintiff,

v.

CITY OF BERKELEY,

Defendant.

CITY OF BERKELEY,

Third-Party Plaintiff,

v.

BAY AREA COMMUNITY SERVICES, a California nonprofit corporation; BUILDING OPPORTUNITIES FOR SELF-SUFFICIENCY, a California nonprofit corporation; DOROTHY DAY HOUSE, a California nonprofit corporation; INSIGHT HOUSING, a California nonprofit corporation; and ROES 1-10,

Third-Party Defendant.

Case No. 23-cv-04537-EMC

**ORDER RE MOTION TO DISMISS THIRD-PARTY COMPLAINT**

Docket Nos. 206, 225, 241

## I. INTRODUCTION

This case concerns the City of Berkeley's treatment of unhoused individuals with disabilities. Plaintiffs are unhoused disabled individuals living in public or in shelters within Berkeley. Plaintiffs have sued the City, alleging — among other things — that shelter policies and shelter operating conditions violate the Americans with Disabilities Act ("ADA"), the Fair Housing Amendments Act ("FHAA"), and Cal. Gov. Code § 11135.

After over two years of litigating the matter, the City filed a Third-Party Complaint ("TPC") asserting that the operating functions of the shelters at issue were in fact the responsibility of Third-Party Defendants Bay Area Community Services ("BACS"), Building Opportunities for Self Sufficiency ("BOSS"), Dorothy Day House ("DDH"), and Insight Housing

(“Insight”) (together, “Third-Party Defendants”) at all relevant times. The City contends that these Third-Party Defendants are liable under express contractual indemnity, equitable indemnity, contribution, and breach of contract for Plaintiffs’ claims that are “based on alleged policies, practices, and conditions at shelter facilities.” TPC (Dkt. 152) ¶ 14.

Because Plaintiffs do not seek damages but focus instead on prospective injunctive relief only, the City’s third-party claims are focused on two key claims: (1) a claim that, if the City is ultimately enjoined, Third-Party Defendants must be required to act in tandem so that the City can meet its obligations; and (2) a claim for attorneys’ fees and costs incurred by the City that are traceable to Third-Party Defendants’ conduct in operating the shelters.

Insight moves to dismiss for failure to state a claim, and failure to satisfy Federal Rules of Civil Procedure 8 and 14. *See* Insight MTD (Dkt. 206-1). DDH and BACS move to join Insight’s motion. *See* DDH Joinder to Insight MTD (Dkt. 225); BACS Joinder to Insight MTD (Dkt. 241). Because Insight filed the sole substantive brief, the Court treats its motion as the operative motion to dismiss.

For the reasons set forth below, the Court **GRANTS** Third-Party Defendants’ motions to join, and **GRANTS IN PART and DENIES IN PART** the Motion to Dismiss.

## II. BACKGROUND

### A. Underlying Action

Plaintiffs’ Third Amended Complaint (“TAC”) asserts six claims against the City: (1) discrimination in violation of the ADA; (2) discrimination against disabled persons in violation of § 11135; (3) violation of the prohibition against unreasonable seizure under the Fourth and Fourteenth Amendments to the US Constitution; (4) unreasonable search and seizure under Article I, section 13 of the California Constitution; (5) violation of the FHAA; and (6) exposure to state-created danger in violation of the Fourteenth Amendment to the US Constitution pursuant to § 1983. *See* TAC (Dkt. 150).

For purposes of this motion, the TAC’s allegations may be divided into two categories. The first concerns City-level policies and conduct that have little or nothing to do with the operations of the shelters provided by the City, such as enforcement of the 72-hour parking

ordinance against individuals who use vehicles for shelter and the seizure and destruction of personal property during encampment abatements. *See, e.g.*, TAC ¶¶ 95–98, 286. The second concerns shelter-level conditions, such as shelter intake procedures that do not adequately accommodate cognitive and mental health disabilities, summary "kick-out" policies lacking disability exceptions, no-visitor and curfew rules, and physical accessibility barriers. *See, e.g.*, TAC ¶¶ 113, 120, 128, 131, 144, 149–50. The TAC seeks to hold the City liable for shelter-level conditions by virtue of its alleged funding, oversight, ownership interests, and regulatory role over the shelters. *See, e.g.*, TAC ¶¶ 9, 265, 305, 309.

Plaintiffs do not seek damages against individual shelter operators as defendants, and the TAC seeks only injunctive relief directed at the City's policies and practices, together with attorneys' fees and costs. *See* TAC at 81–84. At the hearing on this motion, Plaintiffs clarified that the shelter-specific allegations included in their complaint are intended to illustrate the City's systemic failures, and that Plaintiffs directed their claims at City-wide policies — to be implemented through the City's supervisory and oversight authority — rather than at any individual operator.

B. <u>Third-Party Complaint</u>

The City alleges in the TPC that, under written operating agreements: shelter operations were the "exclusive responsibility" of Third Party Defendants; the City does not control daily operations, intake, rule enforcement, or individualized accommodation decisions; and Third-Party Defendants expressly assumed responsibility for operating the programs in compliance with the ADA, FHAA, and § 11135. TPC ¶¶ 16–20. These agreements further required Third-Party Defendants to indemnify, hold harmless, release, and discharge the City for claims arising from their operations. *Id.* ¶¶ 21–22. The TPC alleges that, "to the extent Plaintiffs suffered any actionable harm as alleged in the TAC, such harm was caused *in whole or in part* by [Third-Party Defendants'] acts [and] omissions," *id.* ¶ 56 (emphasis added), and that any resulting liability of the City would be "derivative, secondary, or vicarious." *Id.* ¶ 57.

On these allegations, the TPC pleads five claims: (1) express contractual indemnity; (2) equitable indemnity; (3) contribution; (4) breach of contract; and (5) declaratory relief. *Id.* ¶¶ 58–

United States District Court
Northern District of California

89.

## III. LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions *in Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## IV. DISCUSSION

### A. Rule 14

The question presented by the TPC is whether, if the City is held liable to Plaintiffs for conditions at shelters, Third-Party Defendants may be liable to the City with respect to the relief obtained by the Plaintiffs. Rule 14 permits a defending party to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). This mechanism is available only where the third party's liability is "in some way dependent on the outcome of the main claim." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Id.* at 200. It is not enough that the third-party claim arise from the same facts as the main claim. *See id.* at 199–200. There must be a basis of derivative liability stemming from the original

action.

Taking the TPC's allegations as true, the operating agreements delegated shelter operations to Third-Party Defendants and required them to both comply with disability laws and to indemnify the City. TPC ¶¶ 16–22. If Plaintiffs prevail on their shelter-related theories and the City is required to pay attorneys' fees or costs attributable to conditions the operators controlled, Third-Party Defendants "may be liable" to the City for a portion of that liability under the parties' contracts and under equitable indemnity principles. *See, e.g.*, *City of L.A. v. AECOM Servs., Inc.*, 854 F.3d 1149, 1158, 1161 (9th Cir. 2017) (recognizing that public entities routinely delegate program functions by contract and may seek indemnity from the contractor whose conduct caused the entity's liability); *cf. Stewart*, 845 F.2d at 200.

Apart from disputing the factual premise that the shelters, rather than the City, controlled the challenged conditions — the Third Party Defendants contend the City is wholly responsible for the policies and practices challenged by the Plaintiffs — Third-Party Defendants offer no satisfactory *legal* reason as to why the TPC's contract and equitable theories fail as a matter of law. The only exception is the preemption argument, which the Court addresses next. The Rule 14 challenge is therefore **DENIED**.

B. <u>State-Law Claims are Not Preempted</u>

Third-Party Defendants contend that the ADA and FHAA preempt the City's indemnity and contribution claims. They rely principally on *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597 (4th Cir. 2010), which held that federal disability law barred a claim by which defendant sought to "completely insulate itself from liability for an ADA or FHA violation through contract." *Id.* at 602. The controlling authority in this Circuit is *AECOM*, which expressly declined to follow *Niles Bolton* and instead held that "neither Title II nor § 504 preempts" a public entity's "state-law claims for breach of contract . . . against contractors who breach their contractual duty to perform services in compliance with federal disability regulations." 854 F.3d at 1152. *AECOM* holds that preemption only bars attempts to shift a public entity's *entire* liability to a contractor in an effort to insulate the entity from its own statutory obligations. *Id.* at 1156–1160. It does not bar a claim seeking recovery only for the portion of liability caused by the

contractor's own conduct — *i.e.*, recovery that is complete from the contractor's perspective but only partial from the public entity's. *Id.* at 1156 n.3. The public entity still faces liability that cannot be completely passed off to the contractor. Allowing claims against contractors responsible for ADA violations advances, rather than obstructs, the statutes' purposes, because "finding such claims precluded would itself hamper the statutes' regulatory purpose" by letting contractors "shield themselves from any liability they caused." *Id.* at 1156.

The City's third party claims herein are permissible in light of this standard for two key reasons.

***First***, the City does not seek to insulate itself from its own obligations. It concedes that it retains independent duties under federal and state law, TPC ¶ 24, and it seeks recovery only "in whole or in part" for harm "caused . . . by [Third-Party Defendants'] acts [and] omissions." *Id.* ¶ 56. The City cannot, for instance, recover for exposure arising from its own encampment abatement or parking enforcement conduct, which has nothing to do with shelters. The concern animating *Niles Bolton* — total insulation — is therefore absent.

***Second***, there is no damages liability to shift. Plaintiffs seek only injunctive relief and attorneys' fees and costs. The City's monetary exposure is thus limited to fees and costs, and its indemnity claim may reach only the portion of those fees and costs traceable to the operators' shelter-level conduct since the Plaintiffs challenges city policies that have nothing to do with the operation of the shelters. Permitting that limited recovery of fees neither relieves the City of its exposure to injunctive relief in the first instance (it will be charged with the obligation to comply with any injunction regardless of cooperation or not from the shelters) nor insulates it from a fee award attributable to its own conduct separate from that of the shelters. A claim seeking this limited form of recovery is therefore not preempted under *AECOM*.

Accordingly, the motion is **DENIED** to the extent the City's indemnity, contribution, and breach of contract claims seek attorneys' fees and costs attributable to Third-Party Defendants' own conduct. The precise allocation of any such fees and costs, including any reduction to reflect the City's own comparative fault, presents a merits question not properly resolved on a Rule 12(b)(6) motion.

C. Prematurity of Indemnity Claim as to Injunctive Relief

At the hearing, the City explained that it seeks indemnity as to injunctive relief so that, if the City is ordered to reform its programs, the shelters will be required to act in tandem. That claim is not yet ripe. No injunction has been issued, and it is not yet known whether the City will be enjoined and, if so, in what form. If injunctive relief is granted, the obligation to comply will fall on the City; it is possible that such obligation may be satisfied in various ways, such as by adopting City-wide policies applicable to the shelters, by training, or by enforcing its operating agreements. Whether the City will ever need to compel, by way of a third party claim for injunctive relief, a shelter operator to act, and whether any operator will decline to cooperate thus requiring injunctive relief against the shelter, cannot be known at this time. The record, however, contains no indication that the operators are resisting compliance. Until the City is actually required to act and an operator declines, there is no live controversy over enforcing compliance against the operators. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"); *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (same).

Accordingly, the Court does not at this juncture issue a ruling on Third-Party Defendants' motion to dismiss, to the extent the City seeks indemnity as to injunctive relief.

D. Declaratory Relief

Insight seeks dismissal of the declaratory relief claim on the ground that it is derivative of the other claims and must fall with them. Declaratory and injunctive relief are not independent claims, rather they are forms of relief. *See McDowell v. Watson,* 59 Cal. App. 4th 1155, 1159 (Cal. Ct. App. 1997) ("Injunctive relief is a remedy and not, in itself a cause of action ...." (internal quotation marks omitted)); *see also Nat'l Union Fire Ins. Co. v. Karp,* 108 F.3d 17, 21 (2d Cir.1997). Because it is not an independent claim, declaratory relief cannot stand where all underlying claims have been dismissed. *Williams v. Am. Arb. Ass'n, Inc.*, 2025 WL 3280993, at *5 (N.D. Cal. Nov. 25, 2025); *Gonzalez v. Harris Farms, Inc.*, 2014 WL 6981429, at *5 (E.D. Cal. Dec. 10, 2014). To the extent the City's claims against Third-Party Defendants survive, an actual

controversy remains over the parties' respective rights and obligations under the operating agreements. Accordingly, the Court does not at this juncture issue a ruling on Third-Party Defendants' motion to the extent it seeks to dismiss the declaratory relief claim.

E. Rule 8

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Insight claims that the TPC does not identify which of its "operations, acts, or omissions" are at issue and rests instead on vague, conclusory allegations. Insight MTD at 19.

The TPC provides fair notice. It pleads the existence of written operating agreements, TPC ¶¶ 18–22, 59; the substance of those agreements, including the operators' assumption of obligations to comply with applicable law and to indemnify the City, *id.* ¶¶ 19–22, 61; the operators' exclusive control over daily operations, intake, and accommodation determinations, *id.* ¶¶ 16–18, 51; and it identifies each operator's specific facilities and programs. *Id.* ¶¶ 45–52. By incorporating the TAC, *id.* ¶ 12, the TPC further ties the operators' alleged failures to the shelter-level conditions that the TAC describes. Taken together, these allegations give Third-Party Defendants fair notice of the claims and their grounds.

Accordingly, the motion is **DENIED** on Rule 8 grounds.

F. Dismissal of Roe Defendants

In its motion to dismiss, Insight seeks to dismiss Roe Defendants 1–10. Insight MTD at 20. Fictitious-party pleading is disfavored in federal court, though it is permitted where "the identity of alleged defendants [is] not . . . known prior to the filing of a complaint," in which case the plaintiff should be allowed to identify them through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). That condition is not met here, where the City contracted directly with the shelter operators, and their identities are reasonably ascertainable from the City's own records. The City has not identified any operators whose identity is genuinely unavailable to it.

Accordingly, the Court **DISMISSES** Roes 1–10 from the TPC **WITHOUT PREJUDICE**.

G. Leave to Amend

The Court does not rule on the City's request for leave to amend, as the Court dismisses no claim on the merits. The Court denies the motion as to Rule 14, preemption, and Rule 8 challenges; declines to rule on the City's indemnity claim as to injunctive relief and on the declaratory relief claim; and dismisses Roes 1–10 without prejudice. Because no claim ahs been dismissed in a manner that amendment could cure, the request for leave to amend is moot. Should the City later identify additional shelter operators, it may seek leave to add them at that time.

H. Motions to Join

Both DDH and BACS have filed motions to join Insight's motion to dismiss. *See* DDH Joinder to Insight MTD (Dkt. 225) and BACS Joinder to Insight MTD (Dkt. 241). "When reviewing whether to allow a party to join in a motion, the court will allow the joinder when . . . the parties are so similarly situated that filing an independent motion would be redundant." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151 (C.D. Cal. 2016). The City's own allegations group DDH, BACS, and Insight together as contracting shelter operators with the same contractual responsibilities. TPC ¶¶ 18–22, 55–57. They are similarly situated and would raise materially identical arguments.

Accordingly, the Court **GRANTS** Third-Party Defendants' DDH and BACS's motions for joinder to Insight's motion to dismiss.

**V. CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Insight's motion to dismiss the TPC as follows:

1. The motion is **DENIED** as to the Rule 14 challenge.

2. The motion is **DENIED** as to the City's claims for express contractual indemnity, equitable indemnity, contribution, and breach of contract, to the extent those claims seek attorneys' fees and costs attributable to Third-Party Defendants' own shelter-level conduct.

3. The Court does not issue a ruling on the City's claims for indemnity as to any injunctive relief that may be ordered against the City.

4. The Court does not issue a ruling on the claim for declaratory relief.

5. The motion is **DENIED** as to the Rule 8 challenge.
6. Roes 1–10 are **DISMISSED WITHOUT PREJUDICE**.
7. The request for leave to amend is moot.
8. DDH and BACS' motions to join Insight's motion are **GRANTED**.

**IT IS SO ORDERED**.

Dated: August 28, 2026

EDWARD M. CHEN
United States District Judge